**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **TAWANDA CALVIN,** individually and as survivor and next of kin to Kerry Granderson, | |
| *Plaintiff,* | |
| **v.** | Case No. _____ |
| | **JURY DEMAND** |
| **CORECIVIC, INC., CORECIVIC OF TENNESSEE, LLC,** as owner and operator of **TROUSDALE TURNER CORRECTIONAL CENTER, DAMON HININGER, PATRICK SWINDLE, WILLIAM DALIUS, JASON MEDLIN, MARTIN FRINK, DONELLE HARRIS, JOHN DOE, DENISE HAGGARD,** and **KYLE BUSS,** | |
| *Defendants.* | |

---

## ORIGINAL COMPLAINT

---

NOW COMES Tawanda Calvin, the Plaintiff herein, stating and alleging as follows:

### I.    INTRODUCTION

1. Defendant CoreCivic, Inc. is a private prison corporation with an extensive history of prioritizing profits over the health and safety of its inmates. The Plaintiff, Tawanda Calvin, (hereinafter, "Plaintiff Calvin") is the mother of an inmate who died in his cell at the Trousdale Turner Correctional Center (hereinafter, "TTCC"), which is owned and operated by Defendant CoreCivic Inc. Plaintiff Calvin asserts that her son, like so many before him, died because Defendant CoreCivic failed to protect their inmates from the widespread drug smuggling

1

operation run by its employees and because CoreCivic's employees, specifically, their correctional officers and/or prison guards, failed to conduct their regular rounds.

## II.    PARTIES

2. Kerry Granderson, the decedent, was a resident of Shelby County, Tennessee, at the time of his death. He was 31 years of age, having been born on February 25, 1991, and died on May 5, 2022.

3. Plaintiff Calvin was, at all relevant times, a resident of Shelby County, Tennessee and the mother of Kerry Granderson, who suffered a fatal fentanyl overdose at TTCC on May 5, 2022. Plaintiff Calvin asserts claims individually and in her role as survivor and next of kin to Kerry Granderson. Plaintiff Calvin is a citizen of Tennessee, and she may be contacted through counsel.

4. Defendant CoreCivic, Inc. is a private for-profit prison corporation that is headquartered in Nashville, Tennessee. TTCC is owned and operated by CoreCivic, Inc. and CoreCivic of Tennessee, LLC. Defendant CoreCivic, Inc. is duly organized under the laws of the State of Maryland and currently regularly conducts business in the State of Tennessee, namely owning and operating four private prisons in the State, including Trousdale Turner Correctional Center. CoreCivic, Inc. may be served through its registered agent at CoreCivic, Inc., Registered Agent: C T CORPORATION SYSTEM, 300 MONTVUE RD, KNOXVILLE, TN 37919-5546.

5. Defendant CoreCivic of Tennessee, LLC is a wholly-owned subsidiary of CoreCivic, Inc., and it operates all of the CoreCivic facilities in Tennessee. CoreCivic, Inc. and CoreCivic of Tennessee, LLC are hereinafter referred to jointly as "CoreCivic" or "Defendant CoreCivic". CoreCivic is a citizen of Tennessee with its principal place of business and

2

corporate headquarters located in Williamson County, Tennessee. CoreCivic may be served through its registered agent at CoreCivic of Tennessee, LLC, Registered Agent: C T CORPORATION SYSTEM, 300 MONTVUE RD, KNOXVILLE, TN 37919-5546. CoreCivic operates TTCC under the full authority of the State of Tennessee pursuant to Tenn. Code Ann. §§ 41-24-101 et seq., and/or §§ 48-8-101 et seq. and acting under color of state law. CoreCivic is the entity charged by the State of Tennessee with authority to maintain TTCC and has a non-delegable duty to ensure that persons housed at TTCC are protected by the Constitution and the laws of the United States and the State of Tennessee. CoreCivic is responsible for the implementation of policies, procedures, practices, and customs, as well as the acts and omissions challenged by this action.

6. Upon information and belief, Damon Hininger is the Chief Executive Officer of Defendant CoreCivic, Inc.

7. Upon information and belief, Patrick Swindle is the Chief Operating Officer of Defendant CoreCivic, Inc.

8. Upon information and belief, William Dalius is the Vice President of Facility Operations (Business Unit 1) for Defendant CoreCivic, Inc.

9. Upon information and belief, Jason Medlin is the Vice President of Facility Operations (Business Unit 2) for Defendant CoreCivic, Inc.

10. Upon information and belief, Martin Frink was the warden of TTCC from May 2021 to approximately January of 2023. Warden Frink was the warden of TTCC during the year leading up to Granderson's death and at the time of Granderson's death. At all times relevant to causes of action alleged herein, Warden Frink exercised plenary authority over all of TTCC staff. Upon information and belief, Warden Frink is an adult resident and citizen of Tennessee.

3

11. Upon information and belief, Donelle Harris was the Compliance Manager and Assistant Chief of Security at TTCC at all times relevant to the actions and omissions underlying the claims stated herein. Upon information and belief, Donelle Harris is an adult citizen and resident of the State of Tennessee and, at all times relevant herein, was responsible for the guarding, supervision, safety and protection of the inmates at Trousdale Turner Correctional Center, including Kerry Granderson.

12. Upon information and belief, Defendant John Doe was the prison guard on duty for Granderson's unit at the time of his death, who failed to conduct timely rounds and checks on Granderson, on May 4, 2022, and who failed to timely respond to Granderson's emergent medical needs on the night of May 4 and 5, 2022. Upon information and belief, Defendant John Doe is an adult citizen and resident of the State of Tennessee and, at all times relevant to this Complaint, was an employee of Defendant CoreCivic and was responsible for the guarding, supervisions, safety and protection of the inmates of Trousdale Turner Correctional Center, including Kerry Granderson. Defendant John Doe breached his duty to Kerry Granderson, either individually and/or in his official capacity.

13. Upon information and belief, Denise Haggard was a DHO Clerk for TTCC who was arrested for introduction of contraband into a penal facility, specifically, fentanyl smuggled into TTCC on March 31, 2022 – less than five weeks prior to Granderson's death. Upon information and belief, Defendant Haggard is an adult resident and citizen of the State of Tennessee, who may be served at 984 Highway 52 Bypass East, Lafayette, Tennessee 37083.

14. Upon information and belief, Kyle Buss was a Correctional Officer for TTCC who was arrested on August 21, 2022, for introduction of contraband into TTCC, specifically, fentanyl.

4

Upon information and belief, Defendant Buss is an adult resident and citizen of the State of Tennessee, who may be served at 112 Green Acres Lane, Gainesboro, Tennessee 38562.

### III. JURISDICTION, VENUE, AND AUTHORITY

15. This Court has jurisdiction over Plaintiff Calvin's federal claims in this civil action pursuant to 28 U.S.C. § 1331.

16. This Court has supplemental jurisdiction to adjudicate Plaintiffs' state law claims related to the Plaintiffs' federal claims in this action pursuant to 28 U.S.C. § 1367(a).

17. Venue is proper in this Court because one or more of the Defendants reside in the Middle District of Tennessee and because all Defendants are residents of the State of Tennessee, pursuant to 28 U.S.C. § 1391(b)(1).

18. As the judicial district where Mr. Granderson's wrongful death occurred and where Defendant CoreCivic makes its calculated decisions to underinvest in staffing at its Tennessee facilities and to tolerate narcotics trafficking by its employees, venue is independently proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

19. Plaintiff Calvin has authority to maintain this wrongful death action as next-of-kin to the deceased pursuant to Tenn. Code Ann. § 20-5-107 and to recover against the Defendants for her own damages pursuant to Tenn. Code Ann. § 20-5-113.

20. Plaintiff Calvin, as Granderson's mother, has authority to maintain her own claim against all Defendants under the Tennessee Drug Dealer Liability Act pursuant to Tenn. Code Ann. § 29-38-106(a)(1).

5

## IV. FACTUAL ALLEGATIONS

21.  At all times relevant to this Complaint, Kerry Granderson was an inmate housed at Trousdale Turner Correctional Center ("TTCC"), a private, for-profit prison that is owned, managed, and operated by Defendant CoreCivic of Tennessee, LLC.

22. On the evening of May 4, 2022, Granderson ingested enough fentanyl to cause an overdose. It is unclear whether Granderson's ingestion of the drug was voluntary or involuntary. Thereafter, Granderson began experiencing the visible effects of a fentanyl overdose.

23.  An inmate of TTCC discovered that Granderson was suffering from a serious medical episode and notified another inmate, Ingram Cole, that Granderson was unresponsive at approximately 10:00 p.m. and in need of medical assistance. At that time, these inmates began calling out for assistance from the guards for Granderson. Their pleas for help were ignored.

24. Defendant John Doe, the Correctional Officer on duty for Granderson's unit on the night of May 4, 2022, did not respond to the aforementioned inmates' calls for aid, nor did he discover Granderson's unresponsive body until approximately midnight on May 4, 2022. Despite administering four doses of Narcan to Granderson, Trousdale County Emergency Medical Services were unable to revive Granderson and confirmed his death at 12:02 a.m. on May 5, 2022.

25.  TDOC policy required guards and/or correctional officers to check inmates' cells every thirty (30) minutes. Despite this requirement, Defendant John Doe failed to check Granderson's cell for a period of approximately two hours on May 4, 2022, while other inmates were trying to revive Granderson. Had Defendant John Doe or any other prison staff at TTCC regularly conducted cell checks in the two hours prior to Granderson's death and had they

6

responded to Granderson's bunkmates' requests for assistance in a timely fashion, then they would have discovered that Granderson was experiencing an active fentanyl overdose and they could have (and should have) timely administered lifesaving Narcan, which is available to staff at TTCC because fentanyl overdoses are so routine there. If Defendant John Doe or any other guard staff at TTCC had conducted regular checks or responded to the aforementioned inmates' pleas for assistance, Granderson's life could have been saved. Their deliberate indifference caused Granderson's death.

26. After Granderson's death, an autopsy found that Granderson had fentanyl in his blood and the medical examiner found that Granderson died as a result of fentanyl poisoning. Granderson was 31 years old at the time of his death and was less than five (5) months from his schedule release. He left behind his mother, father, siblings, and other family members and friends who loved him very much.

27. Granderson could not have overdosed but for the fact that illegal drugs, including fentanyl, were so widely available at TTCC. The ease with which Granderson and other inmates could obtain illegal drugs, including fentanyl, at TTCC was well-known to CoreCivic management and staff, including Defendant CoreCivic, Defendant Frink[1], Defendant Hininger, Defendant Dalius, Defendant Medlin, Defendant Harris, and Defendant Swindle.

---

[1] *See, e.g.*, Samantha Max, *The other epidemic: Overdoses are spiking in Tennessee prisons, as deadly drugs circulate through supposedly secure facilities*, WPLN NEWS (March 17, 2022) https://wpln.org/post/the-other-epidemic-overdoses-are-spiking-in-tennessee-prisons-as-deadly-drugs-circulate-through-supposedly-secure-facilities/ ("But Jason Carnett says their **Trousdale Turner facility was the worst place he could have been sent as someone with a substance use disorder**. He was there until last fall, and he **says drugs were all around him**.") (emphases added); Meghan Mangrum, *Trousdale correctional officer charged with bringing fentanyl into prison*, THE TENNESSEAN (Apr. 3, 2022), https://www.tennessean.com/story/news/2022/04/03/trousdale-correctional-official-arrested-bringing-fentanyl-into-facility-tennessee/7259884001/; Chris Gregory, Trousdale Turner employee charged with smuggling contraband, LEBANON DEMOCRAT (Apr. 23, 2020),

28. "Drugs such as fentanyl, heroin, methamphetamines, cocaine," and other narcotics and contraband "are brought in by administrators, correctional officers, counselors, medical personnel and outside providers." *See*, **Ex. 1** (Declaration of Raymond E. Watison) at 1, ¶ 5.

29. For the reasons set forth herein, the Plaintiff alleges that Defendants CoreCivic, Frink, Hininger, Dalius, Medlin, Harris, and Swindle were deliberately indifferent to their employees' distribution of illegal drugs at TTCC.

30. Upon information and belief, Defendant CoreCivic, Defendant Frink, and Defendant Harris, in their official capacities and individual capacities, as well as their staff, regularly and knowingly participate in the illegal drug market at TTCC, where Granderson was incarcerated at the time of his death. Additionally, Defendant Haggard and Defendant Buss knowingly participated in the illegal drug market at TTCC through their distribution of fentanyl to inmates housed therein.

31. As a matter of policy, Defendant CoreCivic does not adequately screen the job applicants that it hires as guards and correctional officers. Upon information and belief, the predominantly female guard staff at CoreCivic facilities often have gang affiliations or romantic relationships with gang members who are inmates at TTCC. Somewhat predictably, illegal gangs utilize the gang-affiliated guards at TTCC to smuggle drugs into TTCC and other CoreCivic facilities.

32. Likewise, and also as a matter of policy, Defendant CoreCivic does not adequately screen guard staff for contraband. As a result, guards are able to smuggle illegal drugs easily into TTCC. The Plaintiff intends to present testimony that Defendant CoreCivic fails to comply

---

https://www.lebanondemocrat.com/hartsville/trousdale-turner-employee-charged-with-smuggling-contraband/article_6b865daf-fbc8-5a59-9a35-e84b61ace2e4.html.

8

with generally accepted correctional standards for preventing the entry of contraband into its facility.

33. Plaintiff Calvin alleges that the fentanyl that killed Granderson was smuggled into TTCC by guard staff, and that they are liable for his premature death.

34. For the reasons set forth herein, Plaintiff Calvin alleges that Defendants CoreCivic, Frink, Medlin, Dalius, Hininger, Swindle, and Harris were deliberately indifferent to the medical needs of Granderson by failing to adequately staff TTCC at the time of Granderson's death. Defendant John Doe was deliberately indifferent to the medical needs of Granderson by failing to perform timely checks on Granderson on the night of his death.

35. TTCC is severely understaffed, and it has never met its contractual minimal staffing levels, as admitted by Defendant Frink under oath. *See*, **Ex. 2** (Deposition of Martin Frink) at 35:23 – 36:18. Despite being aware of its understaffing, Defendant CoreCivic deliberately keeps TTCC understaffed to maximize profits in indifference to inmate safety. *See, e.g.*, Mariah Timms, *Trousdale Turner inmate 'would not be dead' if CoreCivic staffed prisons properly, lawsuit claims*, The Tennessean (Feb. 18, 2022), https://www.tennessean.com/story/news/crime/2022/02/18/lawsuit-seeks-damages-changes-corecivic-following-prison-death-trousdale-turner-terry-childress/6846539001/ (**Ex. 3**).

36. The Defendants made a conscious choice not to curb the flow of illegal drugs, including fentanyl, into TTCC by prison staff and they have chosen not to implement available measures – including cell phone jamming and utilizing drug dog checkpoints-because introducing drugs into TTCC provides several benefits to the Defendants, including satisfying the gang members who maintain some semblance of security at TTCC in the absence of adequate staff members.

37. The Defendants have made a conscious choice to retain prison staff who have been caught smuggling contraband into TTCC.

38. Upon information and belief, the Defendants have retaliated against employees who have reported that other employees had smuggled contraband into TTCC.

39. Due to the Defendants' deliberate indifference to the prevalence of illegal drugs at TTCC, employees of Defendant CoreCivic have continued to introduce large quantities of illegal drugs, including fentanyl, into TTCC, since Granderson's death, resulting in dozens of fentanyl overdoses.

40. CoreCivic employees themselves are personally involved in the trafficking of narcotics into TTCC, and the entire administration is aware of this drug smuggling operation.

## V.    <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>
### <u>VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983</u>
### <u>Eighth Amendment – Deliberate Indifference</u>

**(Defendant CoreCivic, Defendant Frink, Defendant Medlin, Defendant Dalius, Defendant Hininger, Defendant Swindle, Defendant Harris, Defendant John Doe)**

41. All prior paragraphs are incorporated herein by reference.

42. The Defendants CoreCivic, Frink, Medlin, Dalius, Hininger, Swindle, Harris, and John Doe have a constitutional duty imposed by the Eighth and Fourteenth Amendments to provide adequate medical treatment to inmates in their custody and care while exercising the traditionally state function of imprisoning inmates.

43. Because Defendant CoreCivic performs a traditional state function while operating a state prison, at all times relevant to this Complaint, Defendant CoreCivic, Defendant Frink,

10

Defendant Medlin, Defendant Dalius, Defendant Hininger, Defendant Swindle, Defendant Harris, and Defendant John Doe acted under the color of state law.

44. The Eighth Amendment's prohibition against cruel and unusual punishment imposes several minimal requirements on prison officials, including requiring them to: (1) provide humane conditions of confinement, (2) ensure that inmates receive adequate medical care, and (3) take reasonable measures to guarantee the safety of the inmates. U.S. Const. Amend. 8; *see also*, *Zakora v. Chrisman*, 44 F.4th 452, at 467 (6th Cir. 2022).

45. An inmate's Eighth Amendment claim based upon deliberate indifference to medical needs is "akin to recklessness," and it carries both objective and subjective components.

46. Unlike the State of Tennessee, Defendant CoreCivic is not entitled to Eleventh Amendment immunity and may be held liable under § 1983 if its official policies or customs resulted in the Plaintiff's injuries. Likewise, Defendants Frink, Doe, Medlin, Hininger, Swindle, and Harris are also not entitled to Eleventh Amendment immunity.

47. Even though Defendant CoreCivic is contractually required to maintain minimum staff levels and security, Defendant CoreCivic, its corporate leaders (Medlin, Dalius, Hininger, and Swindle), Defendant Harris, and Defendant Warden Frink have bolstered company profits by reducing staff levels, despite overwhelming evidence that these practices lead to increased injury and death in its prison population.

48. The Performance Audit Report issued by the Tennessee Comptroller of the Treasury in January of 2020 demonstrates that TTCC is a facility where compliance with requirements, rules and policies is widely ignored. Further, upon information and belief, Defendant CoreCivic, Frink, Medlin, Dalius, Hininger, Swindle, and Harris regularly cut corners when it

comes to complying with state and federal laws regarding the rights, needs and safety of inmates.

49. The Comptroller's Reports strongly suggest that Defendant CoreCivic has repeatedly engaged in fraud and evidence tampering in order to conceal its systematic understaffing, contractual violations, and employee misconduct.

50. Defendant CoreCivic has an unconstitutional policy or practice of maintaining chronically inadequate staffing levels, which prevents inmates like Granderson from receiving timely medical attention when they experience medical emergencies such as the fentanyl overdose suffered by Granderson on May 4, 2022; seriously underinvesting in health care services for its' inmates; and tolerating narcotics trafficking at TTCC. Defendant Frink not only complies with these unconstitutional policies, but he also maintains and implements them at TTCC. Defendants Medlin, Dalius, Hininger, Swindle, and Harris design, maintain, implement, and/or comply with these unconstitutional policies and practices of Defendant CoreCivic. Defendant John Doe complies with these unconstitutional policies and practices.

51. On the night of May 4, 2022, Granderson had an objectively emergent need for medical treatment that the aforementioned Defendants failed to provide.

52. Granderson suffered a fentanyl-induced drug overdose, for which simple treatment was available at TTCC, through the timely administration of Narcan. Due to the prevalence and frequency of overdoses at TTCC, Narcan is available to all staff at TTCC. Despite the Tennessee Department of Corrections' policy requiring guards to perform cell checks on inmates every thirty (30) minutes, Defendant John Doe failed to perform these checks on Granderson between the hours at 10:00 p.m. and 12:00 a.m. on May 4, 2022, during which time Granderson suffered his overdose. Upon information and belief, the reason why

12

Defendant John Doe was not making timely rounds at TTCC at the time of Granderson's overdose and was therefore unable to provide lifesaving Narcan in a timely manner is because TTCC was understaffed. The understaffed positions in Granderson's unit are "critical" positions that must be staffed under Tennessee Department of Correction policy. In addition to failing to check in on Granderson every thirty minutes as required by TDOC, Defendant John Doe failed to timely respond to the cries for help from Granderson's bunkmates who were first alerted to Granderson's serious medical condition around 10:00 p.m. on May 4, 2022.

53. Defendants CoreCivic, Frink, Medlin, Dalius, Hininger, Swindle, and Harris knew that TTCC was chronically understaffed and that critical posts routinely went unstaffed at the time of Granderson's death. They willfully understaffed TTCC because doing so was and remains more profitable.

54. According to a former TTCC Correctional Officer, understaffing TTCC "definitely" helps CoreCivic save money, and "they would much rather pay, you know, eight officers on a night shift a bunch of overtime to run that entire facility, you know, versus having three officers per unit 24 hours a day, which they're supposed to do."[2]

55. Defendant CoreCivic routinely staffs TTCC with just a single officer per unit, which is woefully insufficient to maintain a constitutionally adequate level of inmate safety in the facility.

56. Defendant CoreCivic has, and has long had, actual knowledge that TTCC is severely understaffed. TTCC is understaffed deliberately, because paying for sufficient staffing is expensive and understaffing is more profitable.

---

[2] *See,* **Ex. 4, Tr. of Treyton Lattimore Interview** at 34:3-10.

57. Given its focus on maximizing profits, Defendant CoreCivic routinely fails to meet constitutionally adequate safety standards at TTCC, resulting in recurring, preventable and disproportionately high instances of inmate deaths.

58. Defendant Hininger, CoreCivic's Chief Executive Officer, has actual knowledge of TTCC's chronic understaffing. Despite such knowledge, he has willfully failed to remedy TTCC's deliberate indifference to inmate safety, both because understaffing is more profitable and because he does not care when inmates in CoreCivic's care needlessly die.

59. Defendant Dalius, CoreCivic's Vice President of Facility Operations (Business Unit 1), also has actual knowledge of TTCC's endemic understaffing. Even so, he has similarly failed to remedy TTCC's understaffing and the heightened risk of fatal incidents resulting from it, because understaffing is profitable and because he, too, is unbothered when inmates in CoreCivic's care needlessly die.

60. Defendant Medlin, CoreCivic's Vice President of Facility Operations (Business Unit 2), also has actual knowledge of TTCC's endemic understaffing. Even so, he has similarly failed to remedy TTCC's understaffing and the heightened risk of fatal incidents resulting from it, because understaffing is profitable and because he, too, is unbothered when inmates in CoreCivic's care needlessly die.

61. Defendant Swindle, who served as the Chief Operation Officer for Defendant CoreCivic at the time of Granderson's death, was aware of and personally complicit in Defendant CoreCivic's policies and practices of chronically understaffing TTCC, which facility had never been in compliance with minimum contractual staffing requirements at the time of Granderson's death. Defendant Swindle intentionally refused to mitigate TTCC's

14

chronic understaffing despite his personal knowledge of the extraordinary and often fatal consequences that resulted and will continue to result from said policy.

62. Defendant Harris, who was the Compliance Manager and Assistant Chief of Security for Defendant CoreCivic at TTCC at the time of Granderson's death, was aware of and personally complicit in Defendant CoreCivic's policies and practices of chronically understaffing TTCC, which facility had never been in compliance with minimum contractual staffing requirements at the time of Granderson's death. Defendant Harris, who was charged with ensuring TTCC's compliance with TDOC requirements, refused to mitigate TTCC's chronic understaffing despite her personal knowledge of the extraordinary and often fatal consequences that resulted from said policies.

63. Defendant Frink, who was the warden of TTCC at the time of Granderson's death, was similarly aware of TTCC's extreme understaffing problems. Indeed, he observed them personally almost every single day that he served as warden. Moreover, approximately four months before Granderson's death, Defendant Frink reported to the Prison Relations Committee for the Hartsville/Trousdale County Metropolitan Government that there were 100 vacancies for Corrections Officers at TTCC. Defendant Frink consciously neglected to remedy TTCC's chronic understaffing despite his personal knowledge of the extraordinary and frequently fatal incidents enabled by same.

64. Due to TTCC's chronic understaffing, and despite Granderson's bunkmates' calls for assistance from the prison guards, CoreCivic staff, specifically, Defendant John Doe, did not notice and/or ignored Granderson's objectively emergent need for medical treatment for a period of two hours, causing Granderson to die due to a preventable overdose.

15

65. As a result of the Defendants' deliberate indifference to Granderson's emergent medical needs, Granderson died.

66. Through their deliberate indifference to Granderson's emergent medical needs on May 4 and May 5, 2022, the aforementioned Defendants failed to provide Granderson with constitutionally adequate medical care in violation of the Eighth Amendment, resulting in his untimely death.

67. Due to, in whole or in part, Defendant CoreCivic's pattern and practices of severely understaffing TTCC and of willfully ignoring the rampant availability of overdose-producing drugs, including fentanyl, to its' inmates, Granderson did not receive any meaningful medical treatment for his serious medical needs on May 4 and May 5, 2022.

68. Following his ingestion of fentanyl, Granderson required prompt administration of Narcan, which would likely have saved his life.

69. Because these Defendants failed to provide Granderson with timely medical attention prior to his death and during the two hours after Granderson's bunkmate discovered Granderson's emergency and began calling for help, Granderson died.

70. Plaintiff Calvin brings claims against the CoreCivic entities and Defendants Frink, Medlin, Dalius, Hininger, Swindle, Harris, and John Doe under 42 U.S.C. § 1983 for Eighth Amendment violations, namely deliberate indifference to the emergent medical needs of Kerry Granderson.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### Eighth Amendment – Failure to Protect

**(Defendant CoreCivic, Defendant Frink, Defendant Hininger, Defendant Dalius, Defendant Medlin, Defendant Harris, Defendant Swindle)**

16

71. Plaintiff Calvin incorporates and realleges the foregoing allegations as if set forth herein verbatim.

72. Under the Eighth Amendment, "[a] viable [failure-to-protect] claim has both an objective and a subjective prong, requiring the plaintiff to demonstrate that '(1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety.'" *Zakora v. Chrisman*, 44 F.4th 452 (6th Cir. 2022) (quoting *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)).

73. Due to the aforementioned Defendants' deliberate indifference to the rampant distribution of drugs, including fentanyl, by Defendant CoreCivic's staff into TTCC, "[d]rugs are probably more accessible to people at Trousdale Turner Correctional Center than on the street." *See*, **Ex. 5** (Declaration of Christian Patrick Peyton) at 3, ¶ 10.

74. During Granderson's incarceration at TTCC and prior to his death from a preventable fentanyl overdose, Granderson, like all other inmates at TTCC, was at a serious risk of injury from the overwhelming presence of and unfettered access to dangerous drugs at TTCC before his death. Plaintiff Calvin would show that the risk of injury from unfettered access to deadly drugs at TTCC is objectively serious and this risk is not a risk that today's society chooses to tolerate.

75. Defendants CoreCivic, Frink, Hininger, Dalius, Medlin, Harris, and Swindle were actually aware of the widespread availability of drugs at TTCC at all times relevant to this Complaint, and were deliberately indifferent to the substantial risk of harm posed by said unfettered access to deadly drugs for TTCC's inmate population, including Granderson, as explained in the following paragraphs.

76. At all times relevant to this Complaint, Defendant Frink, as the Warden of TTCC, was actually aware of and deliberately indifferent to the incessant distribution of illegal drugs, including fentanyl, into TTCC by the staff of Defendant CoreCivic.

77. At all times relevant to this Complaint, Defendant CoreCivic, as the owner and operator of TTCC, was actually aware of and deliberately indifferent to the rampant distribution of illegal drugs, including fentanyl, into TTCC by its' staff.

78. At all times relevant to this Complaint, Defendant Hininger, as the Chief Executive Officer of Defendant CoreCivic, was actually aware of and deliberately indifferent to the widespread distribution of illegal drugs, including fentanyl, into TTCC by the staff of Defendant CoreCivic.

79. At all times relevant to this Complaint, Defendant Dalius, as the Vice President of Facility Operations (Business Unit 1) for Defendant CoreCivic, was actually aware of and deliberately indifferent to the rampant distribution of illegal drugs into TTCC by the staff of Defendant CoreCivic.

80. At all times relevant to this Complaint, Defendant Medlin, as the Vice President of Facility Operations (Business Unit 2) for Defendant CoreCivic, was actually aware of and deliberately indifferent to the widespread distribution of illegal drugs into TTCC by Defendant CoreCivic's staff.

81. At all times relevant to this Complaint, Defendant Harris, as the Compliance Manager and Assistant Chief of Security for TTCC, was actually aware of and deliberately indifferent to the rampant distribution of illegal drugs into TTCC by the staff of Defendant CoreCivic.

82. At all times relevant to this Complaint, Defendant Swindle, as the Chief Operating Officer for Defendant CoreCivic, was actually aware of and deliberately indifferent to the widespread distribution of illegal drugs into TTCC by the staff of Defendant CoreCivic.

83. The aforementioned Defendants knew of the excessive risk to inmate health and safety that the TTCC illegal drug market posed to inmates in their care, and these Defendants disregarded these risks. As explained in more detail in the following paragraphs, Defendants CoreCivic, Frink, Hininger, Dalius, Medlin, Swindle, and Harris were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed to the inmates of TTCC, including Granderson, resulting from the prevalence of deadly drugs within TTCC. The aforementioned Defendants further actually drew the inference that the inmates of TTCC were subjected to such a substantial risk of serious harm from drugs in light of the number of reports made to these Defendants regarding drug smuggling by staff, the frequency of staff members being arrested for drug smuggling into TTCC, the high rate of drug overdoses at TTCC, and the excessive amounts of drugs confiscated from TTCC inmates. For example, TTCC reported 120 incidents of drug selling, possession, and/or use among inmates in 2020, 265 incidents reported in 2021, and 229 incidents reported for the first half of 2022.

84. During Granderson's incarceration at TTCC, several members of TTCC staff were arrested for smuggling drugs into TTCC. Specifically, on April 17, 2020, TTCC Correctional Officer Shinitara Kemp was arrested by the Trousdale County Sheriff's Department for introduction of contraband (illegal drugs) into a penal facility, specifically into TTCC. On January 17, 2021, TTCC Correctional Officer Joseph Blayde was arrested by the Westmoreland Police Department for introduction of contraband (schedule VI drugs) into a penal facility, specifically, into TTCC. On March 7, 2022, approximately eight weeks prior to

19

Granderson's death, TTCC Correctional Officer Erica Vaughn was arrested by the Trousdale County Sheriff's Department for introduction of contraband (illegal drugs) into a penal facility, specifically, into TTCC. On March 31, 2022, approximately five weeks prior to Granderson's overdose, TTCC DHO Clerk Denise Haggard was arrested by the Trousdale County Sheriff's Department for introduction of contraband into a penal facility, specifically, into TTCC, and possession with intent to resale fentanyl. Three months after Granderson's death, on August 21, 2022, another TTCC Correctional Officer, Kyle Buss, was arrested by the Trousdale County Sheriff's Department for introduction of contraband (fentanyl, tobacco, and meth) into a penal facility, specifically, into TTCC.

85. Notably, although Defendant CoreCivic is required to report such instances to the Tennessee Department of Corrections via the Tennessee Offender Management Information System ("TOMIS"), TTCC reported zero instances of drugs being confiscated from staff for the years 2020, 2021, and 2022[3]. This inaccurate reporting is the standard practice and policy of Defendant CoreCivic. Specifically, a scathing Performance Audit Report of Tennessee's CoreCivic facilities conducted by the Tennessee Comptroller of the Treasury recently determined that CoreCivic's management failed to "implement or enforce established internal controls to ensure state and CoreCivic correctional facilities staff collected and accurately reported incident information" regarding "inmate deaths, inmate assaults, inmate violence, correction officers' use of force, and inmate accidents and injuries," and it found that in many instances, CoreCivic had destroyed records and evidence in contravention of state law.[4]

_____

[3] Currently, the TDOC Selected Incidents Summary for Fiscal Year 2022 only covers incidents from January 1, 2022 through June 30, 2022.
[4] **Ex. 6**, Tennessee Comptroller of the Treasury, Performance Audit Report, Tennessee Department of Correction (Jan. 2020), *available at* https://comptroller.tn.gov/content/dam/cot/sa/advanced-search/2020/pa19032.pdf.

86. In light of the above-stated arrests of staff and in light of numerous reports being made by inmates and prison employees to Defendants Frink and Harris of staff smuggling drugs into TTCC, Defendant Frink and Defendant Harris were actually aware of these arrests, of the drug smuggling operation run by CoreCivic staff into TTCC, and of the substantial risk of serious harm that unfettered access to deadly drugs posed to inmates, including Granderson.

87. In light of the aforementioned arrests of Defendant CoreCivic's TTCC staff, in light of the numerous reports of drug-smuggling by staff at TTCC, in light of the dramatic increase in overdoses, both fatal and non-fatal, in recent years at Defendant CoreCivic's for-profit prisons in the State of Tennessee, and in light of the increasingly frequent incidents of drugs being confiscated from inmates in their care, Defendants CoreCivic, Hininger, Dalius, Swindle, and Medlin were actually aware of these arrests, of the drug smuggling operation run by their staff at TTCC, and of the substantial risk of serious harm that such easy access to deadly drugs posed to inmates in their care, like Granderson.

88. Despite their actual awareness that illegal drugs, including fentanyl, were prevalent and readily accessible within TTCC and that these drugs were routinely introduced into this facility by their staff, Defendants CoreCivic, Frink, Dalius, Medlin, Swindle, Hininger, and Harris took no meaningful action to stem the flow of drugs smuggled by CoreCivic staff into TTCC or to prevent the inmates under their care from ingesting these drugs. In essence, these Defendants willfully ignored these serious risks to the health and safety of the inmates in their care.

89. In the twelve months prior to Granderson's death, there were several fatal fentanyl overdoses suffered by inmates at TTCC. Specifically, TTCC inmate Ricky Brown died from a fentanyl overdose on May 30, 2021; and TTCC inmate Nazih Nored died from a fentanyl

overdose on August 27, 2021. Upon information and belief, there have been numerous fatal overdoses at TTCC and dozens of non-fatal overdoses at TTCC from May 2020 through May 2022. Inmates at Defendant CoreCivic's other three Tennessee prisons have also suffered from fatal fentanyl overdoses in the year preceding Granderson's death – specifically, Chriteris Allen who died at Whiteville Correctional Facility on August 26, 2021, and Joshua Williams who died at South Central Correctional Facility on November 14, 2021. Defendant CoreCivic's unconstitutional policies and practices have created a substantial risk of harm to inmates at all of their Tennessee prisons, including TTCC.

90. Despite their actual awareness of the large quantity of illegal drugs which TTCC staff had smuggled into TTCC and the dangerous and often fatal nature of such drugs, Defendants CoreCivic, Frink, Hininger, Medlin, Dalius, Swindle, and Harris knowingly permitted TTCC to operate under severe understaffing conditions, which resulted in too few guards monitoring too many units and contributed to staff failing to timely provide life-saving treatment for drug overdoses. Defendant Frink also continued to employ staff members who have smuggled contraband into TTCC. Defendants CoreCivic, Frink, Hininger, Medlin, Dalius, Swindle, and Harris failed to take steps to mitigate the prevalence of drugs into TTCC nor did they adequately investigate reports of drug smuggling by staff. Further, upon information and belief, Defendant Frink and Defendant CoreCivic retaliated against inmates and TTCC staff who reported incidents of staff smuggling drugs into TTCC, which permitted the drug-smuggling operation to continue unhindered and even to flourish – all to the detriment of TTCC inmates, like Granderson.

91. As a result of these Defendants' deliberate indifference to staffing conditions and to the widespread introduction of drugs into TTCC, and as a result of their failure to protect the

distinctly risk-prone inmate population there from unfettered access to dangerous narcotics, including fentanyl, Granderson was exposed to fentanyl, and he ingested fentanyl.

92. As a result of all the above-stated conditions, Granderson died of a preventable drug overdose at TTCC on May 5, 2022.

93. Plaintiff Calvin brings claims against Defendant CoreCivic, Defendant Frink, Defendant Hininger, Defendant Dalius, Defendant Medlin, Defendant Swindle, and Defendant Harris under 42 U.S.C. § 1983 for Eighth Amendment violations, namely a failure to protect claim for their deliberate indifference to the health and safety of Kerry Granderson.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983**
**Failure to Hire, Train, & Supervise**

**(Defendant CoreCivic, Defendant Frink, Defendant Harris, Defendant Medlin, Defendant Swindle, Defendant Hininger, Defendant Dalius)**

94. Plaintiff Calvin incorporates herein all prior allegations as if stated verbatim.

95. Supervisory officials are prohibited from enacting or maintaining unconstitutional policies, practices, or customs with deliberate indifference to the consequences.

96. A supervisor is liable if they at least implicitly authorized, approved of or knowingly acquiesced in the unconstitutional conduct of a subordinate.

97. Defendants CoreCivic, Frink, Harris, Medlin, Hininger, Dalius, and Swindle maintained a policy that permitted corrections officers to smuggle drugs into TTCC and into the prison population and to sell these dangerous and often deadly drugs to incarcerated individuals, who are distinctly risk prone.

98. The aforementioned Defendants knew that drugs smuggled into TTCC had led to overdoses, retaliation and deaths of incarcerated individuals.

23

99. In the alternative, Defendants did not have a policy that permitted officers to sell drugs in prison, but had a policy that failed to properly hire, train, and supervise their subordinates despite their personal knowledge of unlawful conduct presenting a substantial risk of injury to inmates in Defendant CoreCivic's care at TTCC.

100. Defendants CoreCivic, Frink, Harris, Medlin, Hininger, Dalius, and Swindle knew unlawful drugs were being smuggled into TTCC and had a policy that permitted this conduct.

101. These Defendants knew that drugs were an issue at TTCC as reflected by the high number of overdoses and instances of drugs confiscated from inmates as well as the alarming number of staff arrested for drug smuggling and reports of such conduct. These Defendants knew who was bringing in these drugs.

102. In the alternative, these Defendants did not have a policy that permitted drugs to be smuggled and sold at TTCC, but they had a policy that failed to train and supervise the corrections officers bringing the drugs into the facility and failed to train and supervise Defendants Frink and Harris, who knew about the drugs but did nothing to address the problem. Plaintiff Calvin would further allege that these Defendants had a policy of failing to adequately screen job applicants for employment at TTCC and this negligent hiring led to a dramatic increase in the levels of drugs being smuggled into TTCC by staff.

103. The aforementioned Defendants' actions and omissions constitute a violation of Granderson's rights under 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution, which resulted in Granderson's untimely death. Granderson died at 31 years old with less than five months remaining on his sentence.

## COUNT IV
## TENNESSEE COMMON LAW NEGLIGENCE

**(Defendant CoreCivic, Defendant Frink, Defendant Harris, Defendant Hininger, Defendant Medlin, Defendant Dalius, Defendant Swindle)**

104.  All prior paragraphs are incorporated herein by reference.

105. Plaintiff Calvin brings claims against Defendant CoreCivic and Defendants Frink, Harris, Hininger, Medlin, Dalius, and Swindle for negligence leading to the death of Kerry Granderson.

106. Defendants CoreCivic, Frink, Harris, Hininger, Medlin, Dalius, and Swindle owed a legal duty of care to Granderson to protect him from reasonably foreseeable harm.

107. Because Defendant CoreCivic and Defendants Frink, Hininger, Medlin, Dalius, and Swindle had actual knowledge of TTCC's staff smuggling illegal drugs including fentanyl into TTCC and they had actual knowledge of the resulting pervasive illegal drug market at TTCC, these Defendants knew of or had reasons to anticipate that its inmates, specifically, Granderson, were at a heightened risk of drug-related injury, but they did not use reasonable care to prevent such injury.

108. Based upon the rampant drug market ran by Defendant CoreCivic's staff at TTCC, upon the reports and arrests of staff members for said drug-smuggling operation, upon the high level of overdoses at TTCC, Defendants CoreCivic, Frink, Harris, Hininger, Medlin, Dalius, and Swindle had actual and constructive notice of the risk of foreseeable harm to Granderson and they had reason to anticipate an inmate overdose due to the unfettered access to deadly drugs at TTCC.

25

109. Accordingly, Defendant CoreCivic and Defendants Frink, Harris, Hininger, Medlin, Dalius, and Swindle knew or should have known that Granderson would likely become the victim of drug-related injury or death, but they failed to use reasonable care to prevent it.

110. These Defendants' breaches of their duty of care to Granderson proximately caused him to overdose on drugs which Defendant CoreCivic's staff smuggled into TTCC.

## COUNT V
## GROSS NEGLIGENCE

**(Defendant CoreCivic, Defendant Frink, Defendant Harris, Defendant Hininger, Defendant Medlin, Defendant Dalius, Defendant Swindle)**

111. All prior paragraphs are incorporated herein by reference.

112. Plaintiff Calvin brings claims against Defendant CoreCivic and Defendants Frink, Harris, Hininger, Medlin, Dalius, and Swindle for gross negligence leading to the death of Kerry Granderson.

113. Plaintiff Calvin alleges specifically that the aforementioned Defendants committed a negligent act by failing to maintain adequate staffing levels and by failing to curtail illegal drug trafficking by Defendant CoreCivic's staff at TTCC. Said negligent omissions or refusals to act by these Defendants were performed with utter unconcern for the safety of others, namely, inmates housed at TTCC, or, in the alternative, said negligent omissions or refusals to act by these Defendants were performed with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law. *See, Spearman v. Shelby County Board of Education*, 637 S.W.3d 719 (Tenn. Ct. App. May 14, 2021).

26

## COUNT VI
## VIOLATION OF THE TENNESSEE DRUG DEALER LIABILITY ACT
### Tenn. Code Ann. § 29-38-101, *et seq.*

### (Defendant CoreCivic, Defendant Frink, Defendant Harris, Defendant Haggard, Defendant Buss)

114. Plaintiff Calvin incorporates by reference and realleges the foregoing allegations as if set forth fully herein verbatim.

115. The Drug Dealer Liability Act provides a civil remedy for damages to persons and entities injured by illegal drug use. Tenn. Code Ann. §§ 29-38-101 to -116. The Drug Dealer Liability Act aims to shift the costs of injuries caused by illegal drug use to the dealers who benefit from the illegal drug market. Tenn. Code Ann. § 29-38-103(2); *see also*, *Effler v. Purdue Pharma L.P.*, 614 S.W.3d 681 (Tenn. 2020). The intent of the Model Act was to overcome evidentiary difficulties inherent in actions against drug dealers by creating a form of market liability to hold them liable for injuries caused by their involvement in the illegal drug market. George L. Blum, *Validity, Construction, and Application of State Drug Dealer Liability Acts*, 12 A.L.R.7th Art. 2 § 2 (internal citations omitted). Tennessee's Act expressly creates market liability "for those who intentionally join the illegal drug market." Tenn. Code Ann. § 29-38-103(9); *see also*, *Effler v. Purdue Pharma L.P.*, 614 S.W.3d 681, at 685 (Tenn. 2020).

116. Defendant CoreCivic "is one of the biggest distributors" and participants in "trafficking narcotics," including fentanyl, and other contraband to support the illegal drug trade at TTCC, a facility where drugs and contraband cell phones are routinely and easily "brought in through check point(s), where administrators conduct searches." *See,* **Ex. 1** (Declaration of Raymond E. Watison) at 3, ¶ 21.

27

117. Defendant CoreCivic, Defendant Frink, and Defendant Harris regularly and knowingly participate in the illegal drug market by facilitating the distribution of illegal drugs into TTCC, where Granderson was housed at the time of his death. Introducing drugs into TTCC benefits these Defendants in numerous ways, including satisfying the gang members who maintain some semblance of security at the facility in the absence of adequate staffing levels. Gang members are permitted to profit from selling drugs and undertaking widely known but routinely unchecked extortion schemes in exchange. *See, e.g.*, Demetria Kalodimos, *Woman says she paid off gangs to keep son safe in prison*, WSMV (Oct. 5, 2017), https://www.wsmv.com/news/woman-says-she-paid-off-gangs-to-keep-son-safe-in-prison/article_a4e670ea-78be-5087-87e5-a65ecd485475.html (**Ex. 7**).

118. Defendant CoreCivic, as a practice and policy implemented by Defendants Frink and Harris, understaffs and underpays employees at TTCC with actual knowledge that doing so will result in staff members seeking and obtaining additional compensation by smuggling drugs, including fentanyl, into TTCC which is populated by distinctly risk-prone inmates.

119. As a result, CoreCivic employees are incentivized to and rarely prevented from bringing illegal drugs, including fentanyl, into TTCC to sell and distribute to inmates.

120. Defendant Denise Haggard was a DHO Clerk for TTCC and a CoreCivic employee prior to Granderson's fatal overdose who was arrested on March 31, 2022, for introducing contraband, specifically, fentanyl, into a penal facility (TTCC) and for possession with intent to resale. Prior to her arrest, Defendant Haggard knowingly participated in the illegal drug market because she facilitated the distribution of fentanyl into the illegal drug target community of Granderson – specifically, into TTCC in the State House of Representative

28

Legislative District 35 during the period of Granderson's exposure to drugs at TTCC, which occurred from approximately May 2020 through May 2022.

121. Defendant Kyle Buss was a Correctional Officer for TTCC who was arrested on August 21, 2022, for introduction of contraband (fentanyl, tobacco, and meth) into a penal facility, specifically, TTCC. Upon information and belief, prior to his arrest, Defendant Buss knowingly participated in the illegal drug market because he facilitated the distribution of fentanyl into the illegal drug target community of Granderson – specifically, into TTCC in the State House of Representatives Legislative District 35 during the period of Granderson's exposure to illegal drugs at TTCC, which occurred from approximately May 2020 through May 2022.

122. The widespread drug trade and circulation of illegal drugs at TTCC includes fentanyl.

123. Defendants CoreCivic, Frink, and Harris, individually and through their staff, knowingly participate in this illegal drug trade and did so during the time during which Granderson obtained and ingested fentanyl.

124. Granderson was able to obtain fentanyl while incarcerated at TTCC as a direct result of the knowing introduction and distribution of large quantities of fentanyl into TTCC by Defendant CoreCivic staff, including Defendants Haggard and Buss.

125. Defendant Frink, as the Warden of TTCC at the time of Granderson's death, was aware of both the presence of illegal drugs in the facility and the fact that those drugs were commonly introduced to the inmate population by his own staff.

126. Despite his actual knowledge that his staff are smuggling drugs into TTCC, Defendant Frink has consistently failed to prevent illegal drugs from entering the prison or to remove the drugs that are already in rampant circulation there and has chosen not to implement measures

29

that protect the inmates under his care from said widespread drug trade. By allowing CoreCivic staff to smuggle in illegal drugs and by retaining said staff after receiving reports of said drugs smuggled, Defendant Frink facilitated the distribution of illegal drugs into TTCC and was an integral part of the chain of distribution for bringing these illegal drugs into the penal facility.

127. Defendant Harris, as the Compliance Manager and Assistant Chief of Security for TTCC at the time of Granderson's death, was aware of both the presence of illegal drugs at TTCC and the fact that those drugs were commonly smuggled to the inmate population by Defendant CoreCivic's staff.

128. Despite her actual knowledge that TTCC staff were smuggling drugs into TTCC, Defendant Harris consistently failed to prevent illegal drugs from entering the prison or to remove the drugs that are already in widespread circulation there and has chosen not to implement measures that protect inmates under her care from said incessant drug trade. By allowing CoreCivic staff to smuggle in illegal drugs and by retaining said staff despite receiving reports of said drug smuggling, Defendant Harris facilitated the distribution of illegal drugs into TTCC and was an integral part of the chain of distribution for brining these illegal drugs into the penal facility.

129. Due to untreated drug addiction; general feelings of hopelessness, anxiety, and depression attributable to the horrid conditions and pervasive violence at TTCC; and due to the fact that TTCC does not provide adequate levels of staff or medical care to treat the many inmates who are beaten, stabbed, raped, or otherwise abused there, many inmates turn to the widely available drugs, including fentanyl, which Defendant CoreCivic's staff readily provide.

130. As a result of the rampant availability of fentanyl at TTCC, Granderson overdosed on fentanyl; he was left without medical care or staff assistance for a period of hours thereafter; and he died.

131. Granderson was not the first inmate to overdose on fentanyl at TTCC and he will not be the last.

132. Multiple inmates overdosed on fentanyl before and after Granderson's death.

133. Multiple inmates have died from fentanyl overdoses before and after Granderson's death. *See*, *supra* at ¶ 89.

134. Defendants CoreCivic, Frink, and Harris do not care when inmates die at TTCC except to the extent that the public learns about such deaths and becomes enraged by the pervasive human rights abuses that occur there daily. Because of this apathy towards its inmates, these Defendants have made no meaningful effort to stop the rampant flow of drugs, including fentanyl, into TTCC even after Granderson's death, and they do not intend to do so in the future.

135. Plaintiff Calvin brings claims under Tenn. Code Ann. § 29-38-106 against Defendant CoreCivic, Defendant Frink, Defendant Harris, Defendant Haggard, and Defendant Buss for injuries caused by the aforesaid Defendants' involvement in the illegal drug market, seeking economic and noneconomic damages, punitive damages, attorney fees, and the costs of litigation, including expert witness fees.

**Liability Under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)**

**(Defendant CoreCivic, Defendant Hininger, Defendant Swindle, Defendant Medlin, Defendant Dalius, Defendant Frink)**

136. Plaintiff Calvin incorporates and realleges the foregoing allegations as if fully set forth verbatim herein.

137. Defendants CoreCivic, Hininger, Swindle, Medlin, Dalius, and Frink have adopted a policy and practice of severely understaffing their facilities, including TTCC, without regard to inmate safety because understaffing is more profitable.

138. As a result of multiple audits identifying TTCC's severe understaffing issues and thousands of violent incidents, both reported and unreported, at the facility over a period of years, Defendants CoreCivic, Hininger, Swindle, Medlin, Dalius, and Frink have actual knowledge of TTCC's chronic understaffing problems, but they chose not to staff TTCC adequately for the sake of increased profits.

139. At the time of Granderson's death, CoreCivic employees, including Defendants Hininger, Swindle, Medlin, Dalius, and Frink, had actual knowledge that TTCC's chronic understaffing problems resulted in an extraordinary and outsized level of preventable deaths, including treatable drug overdoses, at the facility.

140. CoreCivic's policy and practice of understaffing is widespread and endemic to CoreCivic's prison facilities, including TTCC.

141. Defendants CoreCivic, Hininger, Swindle, Medlin, Dalius, and Frink knew of the heightened and chronic safety risks to inmates resulting from understaffing at TTCC, but they tolerated, maintained, and promoted understaffing to generate greater profits for CoreCivic at the expense of the safety of inmates like Granderson.

32

142. Granderson's death is attributable to Defendant CoreCivic's policy and practice of failing to ensure adequate staffing at its prison facilities, including TTCC, which was explicitly or impliedly authorized by Defendants Hininger, Swindle, Medlin, Dalius, and Frink, and in which they knowingly acquiesced in accordance with CoreCivic's policy, custom, and practice of prioritizing profits over inmate safety.

143. If TTCC had been properly staffed, both quantitatively and qualitatively, and properly supervised, Granderson would not be dead.

144. TTCC's chronic understaffing also continues to remain unremedied even after Granderson's death. Indeed, several more inmates have died at TTCC following Granderson's death and inmates there continue to die with dramatically outsized frequency. In many cases, such deaths are not reported to the public.

## COUNT VIII
## Loss of Filial Consortium

### (All Defendants)

145. Plaintiff Calvin realleges and incorporates the foregoing allegations as if fully stated herein verbatim.

146. Tennessee allows for an award of damages for loss of filial consortium and other damages for the death of one's child under Tenn. Code Ann. § 20-5-113 and Tenn. Code Ann. § 20-5-107(a). *See, Hancock v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 54 S.W.3d 234, 236 (Tenn. 2001).

147. Each of the Defendants' wrongful acts, faults, omissions, and tortious misconduct caused the Plaintiff Tawanda Calvin to suffer loss of filial consortium and other damages arising from the wrongful death of her beloved son.

33

148. Accordingly, Plaintiff Calvin is entitled to an award of damages from all Defendants including the pecuniary value of Granderson's life and the loss of her son's attention, guidance, care, protection, companionship, cooperation, affection, and love.

## VI.     REQUEST FOR RELIEF

WHEREFORE, Plaintiff Calvin prays for the following relief:

1. That proper service issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2. That the Plaintiff be awarded all actual, compensatory, consequential, and incidental damages to which the Plaintiff are entitled;

3. That the Plaintiff be awarded punitive damages together with pre-judgment interest at the maximum rate allowed by law and post-judgment interest at the legal rate;

4. That Defendants CoreCivic, Hininger, Swindle, Dalius, Medlin and Frink be found to have acted illegally by failing to ensure a constitutionally adequate level of inmate safety at Trousdale Turner Correctional Center.

5. That the Plaintiff be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b);

6. That the Plaintiff be awarded damages pursuant to T.C.A. § 29-38-101 *et seq.*;

7. That a jury of 12 be empaneled to try this cause;

8. That pre-judgment and post-judgment interest be awarded to the Plaintiff; and

9. That the Plaintiff be awarded all further relief, both general and specific, to which the Plaintiff may be entitled.

Respectfully Submitted,

Rachael E. Putnam, TN Bar No. 21654
Hallie G. Flanagan, TN Bar No. 37351
Putnam Firm
*Attorneys for Plaintiff*
2148 Monroe Ave
Memphis, TN 38104
(901) 302-9120
rachael@putnamfirm.com
hallie@putnamfirm.com