IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TAWANDA CALVIN, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:23-cv-00447 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| CORECIVIC, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Pending before the Court is a "Motion to File Unredacted Surveillance Video Footage Under Seal and to Withdraw the Previously Filed Unredacted Surveillance Video Footage" (Doc. No. 73, "Motion") filed on November 6, 2025 by Defendants CoreCivic, Inc., CoreCivic of Tennessee, LLC, Kyle Buss, William Dalius, Martin Frink, Denise Haggard, Donelle Harris, Damon Hininger, Jason Medlin, and Patrick Swindle (collectively, "Defendants").

Via the Motion, Defendants "move the Court for permission to file unredacted surveillance video footage [("Unredacted Video")] from the Trousdale Turner Correctional Center ("Trousdale")" depicting "Kerry Granderson's ("Granderson") housing unit at Trousdale, Unit Whiskey Alpha," under seal. (*Id.* at 1). In connection with the Motion, Defendants manually filed two flash drives with the Court. One flash drive, labeled "Flash Drive A," contains the Unredacted Video Defendants wish to file under seal.[1] Another flash drive, labeled "Flash Drive B," contains an edited version ("Redacted Video") of the Unredacted Video[2] that "removes the actual video footage but leaves the header and the footer on the video footage, which demonstrates the location,

---

[1] The Court's receipt of the Unredacted Video may be found at Docket No. 75.

[2] The Court's receipt of the Redacted Video may be found at Docket No. 74.

date, and time of the video footage and contains a counter that shows the full length of the video footage." (*Id.* at 4). Defendants aver that the Redacted Video is "for routine filing not under seal." (*Id.*). In addition, via the Motion, Defendants "move the Court for permission to withdraw the unredacted video footage," at Docket No. 71 that they manually filed in connection with a previous and ultimately denied motion to seal at Docket No. 70. (Doc. No. 73 at 2).

Via the Motion, Defendants inform the Court that "Defendants conferred with Plaintiff," Tawanda Calvin, "and she does not oppose the relief requested through" the Motion. (*Id.* at 5).

For the reasons described below, the Defendants' Motion is **GRANTED.**

A party seeking to seal a document from public view must provide "compelling reasons" to seal the document and demonstrate that sealing is narrowly tailored to serve those reasons by analyzing "in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305-06 (6th Cir. 2016). The Sixth Circuit has also noted that "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *Id.* at 308 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)). Notably, by itself, a document's designation as confidential under a protective order agreed to by the parties does not suffice to meet this burden. *See, e.g.*, *Hughes v. Core Civic, Inc.*, No. 3:19-CV-924, 2021 WL 5827136, at *1 (M.D. Tenn. Dec. 8, 2021), *report and recommendation adopted*, 2021 WL 2411342 (M.D. Tenn. June 11, 2021). *Cf. Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983) (noting that a "confidentiality agreement between the parties does not bind the court in any way" in deciding whether to seal documents). From this, it easily follows that a party's mere assertion (even if made not merely via a confidentiality designation pursuant to a protective order) that a document is confidential does not suffice, either. Moreover, and relevant here, "other courts have found it

appropriate to seal . . . prison surveillance videos." *Est. of Miller v. Mich. Dep't of Corr.*, No. 22-10934, 2022 WL 3153794, at *2 (E.D. Mich. Aug. 8, 2022). *See also Cooper v. Bower,* No. 5:15-CV-P249-TBR, 2017 WL 3388953, at *1 (W.D. Ky. Aug. 4, 2017) (placing prison surveillance video footage under seal where release could reveal an institution's "methods or practices in obtaining the video and show areas where the camera is capable of focusing and blind spots outside the camera's range" or otherwise "pose a threat to the safety and security of inmates, staff, and institution." (internal quotation marks omitted)).

Even where a party provides its own analysis in a motion to seal, a district court that chooses to seal court records must set forth specific findings and conclusions that "justify nondisclosure to the public." *Brown*, 710 F.2d at 1176. This is true even if neither party objects to the motion. *Id.* Therefore, a court must explain the basis for sealing court records irrespective of whether anyone objects to it. And the Court will do so here.

Defendants argue that the Unredacted Video should be sealed because it:

> . . . evidences the layout of Unit Whiskey Alpha and the activity that took place within the housing unit during the timeframe in question. This includes the manner in which count and security checks were performed in the housing unit, the manner in which inmates moved throughout the housing unit, and the manner in which security and medical personnel responded to a medical emergency in the housing unit involving Granderson.

(Doc. No. 73 at 2).

Defendants also argue that the Unredacted Video should be sealed because:

> The release of [the Unredacted Video] from within Trousdale to the public potentially would endanger or compromise the security of the inmates, the employees, and the public at large. By way of example, an examination of the video footage would show the manner in which security personnel conduct count in the housing unit, the layout of the housing unit, precisely what the cameras capture, and precisely what the cameras do not capture -- or the blind spots within the housing unit. An inmate equipped with knowledge regarding the blind spots on the video footage would know precisely where to go to engage in inappropriate activity that would not be captured by the video cameras.

(*Id.* at 2-3).

The Court has now reviewed the Unredacted Video and concludes that Defendants have provided compelling reasons for placing the Unredacted Video under seal.

The Court agrees with Defendants' representations that the Unredacted Video both "evidences the layout of Unit Whiskey Alpha and the activity that took place within the housing unit during the timeframe in question," that the "release of [the Unredacted Video] from within Trousdale to the public potentially would endanger or compromise the security of the inmates, the employees, and the public at large," and that "an examination of the video footage would show the manner in which security personnel conduct count in the housing unit, the layout of the housing unit, precisely what the cameras capture, and precisely what the cameras do not capture -- or the blind spots within the housing unit." (*Id.* at 2-3). Thus, it appears that the Unredacted Video is exactly that kind of prison surveillance footage "other courts have found . . . appropriate to seal," *Est. of Miller*, 2022 WL 3153794, at *2, because the release of the Unredacted Video could reveal an institution's "methods or practices in obtaining the video and show areas where the camera is capable of focusing and blind spots outside the camera's range" or otherwise "pose a threat to the safety and security of inmates, staff, and institution." *Cooper*, 2017 WL 3388953, at *1 (internal quotation marks omitted)).

Moreover, throughout the roughly hour and twenty-five-minute-long Unredacted Video, the Court also identified numerous individuals who do not appear to be named as parties in the present action —that is, third parties—which also weighs in favor of sealing. *Shane Grp.*, 825 F.3d at 308 (internal quotation marks omitted) ("[T]he point about third parties is often one to take seriously; the privacy interests of innocent third parties should weigh heavily in a court's balancing equation"). Thus, there are compelling reasons to seal the Unredacted Video.

Moreover, the seal in question appears to be narrowly tailored. The Unredacted Video Defendants seek to seal is less than 90 minutes long, and at no point in the video do the safety concerns detailed by the Court above or the concerns animating the Court with respect to the privacy interests of third parties dissipate (that is to say, the entirety of the video contains individuals on screen who do not appear to be parties to this action). Moreover, although the Redacted Video submitted by Defendants for filing not under seal "removes the actual video footage but leaves the header and the footer on the video footage, which demonstrates the location, date, and time of the video footage and contains a counter that shows the full length of the video footage," (*id.* at 4), Defendants have stated that "[t]here is not a practicable way for Defendants to redact the video footage in a less restrictive manner." (*Id.* at 4).

Thus, because there are compelling reasons to seal the Unredacted Video, and because the seal is narrowly tailored, the Unredacted Video contained in Flash Drive A will remain under seal. Additionally, the Redacted Video contained in Flash Drive B will remain not under seal and be accessible to the public.

In addition, via the Motion, Defendants "move the Court for permission to withdraw the unredacted video footage," at Docket No. 71 that Defendants manually filed in connection with a previous and ultimately denied motion to seal (Doc. No. 70). (Doc. No. 73 at 2). In a previous order (Doc. No. 72) denying the previous motion to seal (Doc. No. 70), the Court provided that if Defendants wished to withdraw the video at Docket No. 71, the "Court would grant such a motion if made, thus removing the video from public view." (Doc. No. 72 at 3 n.1). Accordingly, the Court grants Defendants the "permission to withdraw the unredacted video footage" at Docket No. 71.

Thus, Defendants' Motion is **GRANTED** in its entirety, and the Unredacted Video contained in Flash Drive A (the filing of which is reflected at Docket No. 75) will remain under

seal, and the Redacted Video contained in Flash Drive B (the filing of which is reflected at Docket No. 74) will remain not under seal and thus be accessible to the public.

The previously filed unredacted video footage (the filing of which is reflected at Docket No. 71) is deemed WITHDRAWN, and the Clerk of Court is DIRECTED to ensure that the docket so reflects. Counsel for Defendants shall contact Chambers to arrange for disposition of that unredacted video footage so that it is no longer in the Court's files.

IT IS SO ORDERED.


_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE