IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TAWANDA CALVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:23-cv-00447 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| CORECIVIC, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

Pending before the Court is a "Motion for Judgment on the Pleadings" (Doc. No. 36, "Motion") filed by CoreCivic, Inc. ("Defendant CoreCivic, Inc."), CoreCivic of Tennessee, LLC ("Defendant CoreCivic of Tennessee"),[1] Kyle Buss ("Defendant Buss"), William Dalius ("Defendant Dalius"), Martin Frink ("Defendant Frink"), Denise Haggard ("Defendant Haggard"), Donelle Harris ("Defendant Harris"), Damon Hininger ("Defendant Hininger"), Jason Medlin ("Defendant Medlin"), and Patrick Swindle ("Defendant Swindle," and, collectively with Defendant CoreCivic, Inc, Defendant CoreCivic of Tennessee, Defendant Buss, Defendant Dalius, Defendant Frink, Defendant Haggard, Defendant Harris, Defendant Hininger, and Defendant Medlin, "Defendant-Movants").[2] Via the Motion, and pursuant to Federal Rule of Civil Procedure

---

[1] The Court herein will sometimes refer to Defendant CoreCivic, Inc. and Defendant CoreCivic of Tennessee collectively as "CoreCivic".

[2] Beyond the Defendant-Movants, there is one other (unnamed) defendant in this action: Defendant John Doe ("Defendant Doe"). Naturally, because he is still unnamed, Defendant Doe did not join (or otherwise respond to) the instant Motion. But as will become clear below, the Motion also addresses Plaintiff's claim against Defendant Doe, and Plaintiff's claim against Defendant Doe will be dismissed for the reasons stated herein.

Additionally, herein the Court will refer to Defendant-Movants and Defendant Doe collectively as "Defendants."

12(c), Defendant-Movants request that the claims of Plaintiff, Tawanda Calvin,[3] brought via her complaint (Doc. No. 1, "Complaint"), be dismissed for failure to state a claim on which relief may be granted. (Doc. No. 36 at 3).

Supporting Defendant-Movants' Motion is an opening brief (Doc. No. 37, "Opening Brief"). Plaintiff has filed a response (Doc. No. 40, "Response") in opposition to the Motion. Defendant-Movants have filed a reply (Doc. No. 41, "Reply") in support of the Motion.[4] For the reasons described herein, the Court will **GRANT** the Motion in its entirety.

ALLEGED FACTS[5]

Below, the Court will begin by providing a brief overview of the parties to this action, then provide an overview of the circumstances out of which this action arose and finally review Plaintiff's claims and the Defendant-Movants' Motion.

---

[3] Plaintiff brings this action individually and as a survivor and next of kin to Kerry Granderson ("Granderson").

[4] Defendant-Movants have also filed a notice of supplemental authority (Doc. No. 78) in connection with the Motion and therein inform the Court of the decision from the Sixth Circuit in *Williams v. CoreCivic of Tennessee, LLC*, No. 25-5377, 2026 WL 323971 (6th Cir. Feb. 6, 2026).

[5] The facts herein are taken from the Complaint. For purposes of the instant Motion, the facts in the Complaint are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

*1. The Parties*[6]

Plaintiff "was . . . a resident of Shelby County, Tennessee and the mother of [ ] Granderson, who suffered a fatal fentanyl overdose at [Trousdale Turner Correctional Center ("TTCC")] on May 5, 2022." (Doc. No. 1 at ¶ 3). Plaintiff "asserts claims individually and in her role as survivor and next of kin to [ ] Granderson." (*Id.*). Granderson, "the decedent, was a resident of Shelby County, Tennessee[] at the time of his death. He was 31 years of age, having been born on February 25, 1991, and died on May 5, 2022." (*Id.* at ¶ 2).

Defendant CoreCivic, Inc. "is a private for-profit prison corporation that is headquartered in Nashville, Tennessee. [ ] Defendant CoreCivic, Inc. . . . conducts business in the State of Tennessee, namely owning and operating four private prisons in the State, including [TTCC]." (*Id.* at ¶ 4). Defendant CoreCivic of Tennessee is "a wholly-owned subsidary of [Defendant] CoreCivic, Inc., and it operates all of the CoreCivic facilities in Tennessee." (*Id.* at ¶ 5). CoreCivic[7] "operates TTCC under the full authority of the State of Tennessee pursuant to Tenn. Code Ann. §§ 41-24-101 et seq., and/or§§ 48-8-101 et seq." (*Id.*).

Turning to the individual defendants, Defendant Hininger is the "Chief Executive Officer of Defendant CoreCivic, Inc." (*Id.* at ¶ 6). Defendant Swindle "is the Chief Operating Officer of Defendant CoreCivic, Inc." (*Id.* at ¶ 7). Defendant Dalius is the "Vice President of Facility

---

[6] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document. In addition, where the Complaint is cited herein without including a paragraph symbol, the citation is not to a paragraph number but rather to a page that contains the cited content outside the boundaries of any paragraph.

[7] As noted above, the Court will sometimes refer to Defendant CoreCivic, Inc. and Defendant CoreCivic of Tennessee collectively as "CoreCivic" herein.
  The Court notes that in her Complaint, Plaintiff refers to Defendant CoreCivic, Inc. and Defendant CoreCivic of Tennessee collectively as "CoreCivic" or "Defendant CoreCivic." (Doc. No. 1 at ¶ 5).

Operations (Business Unit 1) for Defendant CoreCivic, Inc." (*Id.* at ¶ 8). Defendant Medlin is the "Vice President of Facility Operations (Business Unit 2) for Defendant CoreCivic, Inc." (*Id.* at ¶ 9).

Defendant Frink "was the warden of TTCC from May 2021 to approximately January of 2023. [Defendant] Frink was the warden of TTCC during the year leading up to Granderson's death and at the time of Granderson's death. At all times relevant to causes of action alleged herein, [Defendant] Frink exercised plenary authority over all of TTCC staff." (*Id.* at ¶ 10). Defendant Harris "was the Compliance Manager and Assistant Chief of Security at TTCC at all times relevant to the actions and omissions underlying the claims stated herein." (*Id.* at ¶ 11). Defendant Doe "was the prison guard on duty for Granderson's unit at the time of his death, who failed to conduct timely rounds and checks on Granderson, on May 4, 2022, and who failed to timely respond to Granderson's emergent medical needs on the night, of May 4 and 5, 2022." (*Id.* at ¶ 12). Defendant Haggard "was a DHO Clerk for TTCC who was arrested for introduction of contraband into a penal facility, specifically, fentanyl smuggled into TTCC on March 31, 2022 - less than five weeks prior to Granderson's death." (*Id.* at ¶ 13).[8] Defendant Buss "was a Correctional Officer for TTCC who was arrested on August 21, 2022, for introduction of contraband into TTCC, specifically, fentanyl." (*Id.* at ¶ 14).

### 2. Factual Background

This action arises out of the death of Granderson as a result of a fentanyl overdose in the early morning hours of May 5, 2022. "Granderson was an inmate housed at [TTCC,] a private, for-profit prison that is owned, managed, and operated by Defendant CoreCivic of Tennessee, LLC." (*Id.* at ¶ 21). On the evening of May 4, 2022 "Granderson ingested enough fentanyl to cause an

---

[8] Plaintiff does not define what "DHO" stands for in the Complaint.

overdose." (*Id.* at ¶ 22). Another inmate at TTCC "discovered that Granderson was suffering from a serious medical episode and notified another inmate, Ingram Cole, that Granderson was unresponsive at approximately 10:00 p.m. and in need of medical assistance. At that time, these inmates began calling out for assistance from the guards for Granderson. Their pleas for help were ignored." (*Id.* at ¶ 23).

Defendant Doe, "the Correctional Officer on duty for Granderson's unit on the night of May 4, 2022, did not respond to the aforementioned inmates' calls for aid, nor did he discover Granderson's unresponsive body until approximately midnight on May 4, 2022." (*Id.* at ¶ 24). Trousdale County Emergency Medical Services attempted to assist Granderson, but "were unable to revive [him] and confirmed his death at 12:02 a.m. on May 5, 2022." (*Id.*). Although "TDOC policy required guards and/or correctional officers to check inmates' cells every thirty (30) minutes[, ]Defendant [ ] Doe failed to check Granderson's cell for a period of approximately two hours on May 4, 2022, while other inmates were trying to revive Granderson." (*Id.* at ¶ 25). "After Granderson's death, an autopsy found that Granderson had fentanyl in his blood and the medical examiner found that Granderson died as a result of fentanyl poisoning." (*Id.* at ¶ 26).

There is a "widespread availability of drugs at TTCC." (*Id.* at ¶ 75). And the "ease with which Granderson and other inmates could obtain illegal drugs, including fentanyl, at TTCC was well-known to CoreCivic management and staff, including [ ] CoreCivic, Defendant Frink, Defendant Hininger, Defendant Dalius, Defendant Medlin, Defendant Harris, and Defendant Swindle." (*Id.* at ¶ 27 (footnote omitted)). Indeed, "[m]ultiple inmates overdosed on fentanyl before and after Granderson's death." (*Id.* at ¶ 132). And "there were several fatal fentanyl overdoses suffered by inmates at TTCC" in the year before Granderson's death. (*Id.* at ¶ 89). More specifically, in the year before Granderson's death, two inmates, Ricky Brown and Nazih Nored,

overdosed at TTCC. (*Id.*). Further, TTCC "reported 120 incidents of drug selling, possession, and/or use among inmates in 2020, 265 incidents reported in 2021, and 229 incidents reported for the first half of 2022." (*Id.* at ¶ 83).

Additionally, "CoreCivic, Defendant Frink, and Defendant Harris, in their official capacities and individual capacities, as well as their staff, regularly and knowingly participate in the illegal drug market at TTCC," and "Defendant Haggard and Defendant Buss knowingly participated in the illegal drug market at TTCC through their distribution of fentanyl to inmates housed therein." (*Id.* ¶ at 30). Moreover, "the predominantly female guard staff at CoreCivic facilities often have gang affiliations or romantic relationships with gang members who are inmates at TTCC. Somewhat predictably, illegal gangs utilize the gang-affiliated guards at TTCC to smuggle drugs into TTCC and other CoreCivic facilities." (*Id.* at ¶ 31). In fact, "[d]uring [(and after)] Granderson's incarceration at TTCC, several members of TTCC staff were arrested for smuggling drugs into TTCC." (*Id.* at ¶ 84). This includes Defendant Haggard, who "was arrested [five weeks prior to Granderson's overdose] by the Trousdale County Sheriff's Department for introduction of contraband into a penal facility, specifically, into TTCC," and Defendant Buss, who was "arrested by the Trousdale County Sheriff's Department for introduction of contraband (fentanyl, tobacco, and meth) . . . into TTCC" three months after Granderson's death. (*Id.* at ¶ 84).

Furthermore, "TTCC is severely understaffed . . . [and d]espite being aware of its understaffing, [ ] CoreCivic deliberately keeps TTCC understaffed to maximize profits in indifference to inmate safety." (*Id.* at ¶ 35). Likewise, Defendants chose "not to curb the flow of illegal drugs, including fentanyl, into TTCC by prison staff" and chose "not to implement available measures . . . because introducing drugs into TTCC provides several benefits to the Defendants,"

such as "satisfying the gang members who maintain some semblance of security at TTCC in the absence of adequate staff members." (*Id.* at ¶ 36).

Plaintiff ultimately alleges that "the fentanyl that killed Granderson was smuggled into TTCC by guard staff, and that they are liable for his premature death." (*Id.* at ¶ 33).

### 3. *Plaintiff's Claims and Defendant-Movants' Motion*

#### a. Plaintiff's Claims[9]

Based on the foregoing, Plaintiff brings eight claims—four based on federal law and four based on state law—against Defendants. The Court will review these claims below.

Via Count I, Plaintiff brings a claim under 42 U.S.C. § 1983 (hereinafter, sometimes, "Section 1983") against Defendant CoreCivic, Inc., Defendant CoreCivic of Tennessee, Defendant Frink, Defendant Medlin, Defendant Dalius, Defendant Hininger, Defendant Swindle, Defendant Harris, and Defendant Doe. (Doc. No. 1 at ¶¶ 41-70).[10] Count I is based on alleged violations of Granderson's Eighth Amendment rights (as made applicable to the states via the Fourteenth Amendment) as a result of the alleged deliberate indifference[11] of the Count I Defendants to Granderson's medical needs on the night of May 4, 2022. Specifically, Plaintiff alleges that through their deliberate indifference, the Count I Defendants "failed to provide Granderson with

---

[9] The Court notes that Plaintiff does not specify whether her claims are against the individual Defendants in their individual capacities, official capacities, or both.  And, although Plaintiff in at least one place states that that certain Defendants *undertook certain acts* in both their official and individual capacities, (Doc. No. 1 at ¶ at 30), that statement sheds no light on whether those Defendants (or other Defendants) are *being sued* in their individual or official capacities or both; this is because it is one thing to *undertake* an *act*, and it is another thing to *be sued*. Given that the Court herein ultimately concludes that Plaintiff has not adequately pled an underlying constitutional violation as required for any of Plaintiff's federal claims to survive and (accordingly) declines to exercise supplemental jurisdiction over Plaintiff's state law claims, this failure to specify by Plaintiff is not relevant to the Court's analysis herein.

[10] In the context of its discussion of Count I, and solely in this context, the Court will refer to those Defendants against whom Count I is brought as the "Count I Defendants."

[11] In other words, Count I is what is known more colloquially as a "deliberate indifference" claim under the Eighth Amendment.

constitutionally adequate medical care in violation of the Eighth Amendment, resulting in his untimely death." (*Id.* at ¶ 66). Plaintiff further alleges that "[d]ue to, in whole or in part" CoreCivic's "pattern and practices of severely understaffing TTCC and of willfully ignoring the rampant availability of overdose-producing drugs, including fentanyl, to its' inmates, Granderson did not receive any meaningful medical treatment for his serious medical needs on May 4 and May 5, 2022." (*Id.* at ¶ 67).

Via Count II, Plaintiff brings a further Section 1983 claim, this one against Defendant CoreCivic, Inc., Defendant CoreCivic of Tennessee, Defendant Frink, Defendant Hininger, Defendant Dalius, Defendant Medlin, Defendant Harris, and Defendant Swindle. (*Id.* at ¶¶ 71-93).[12] Count II arises out of alleged violations of Granderson's Eighth Amendment rights due to the alleged failure of the Count II Defendants "to protect the distinctly risk-prone inmate population [at TTCC] from unfettered access to dangerous narcotics, including fentanyl." (*Id.* at ¶ 91).[13] Plaintiff also alleges that the unconstitutional "policies and practices" of Defendant CoreCivic, Inc. and Defendant CoreCivic of Tennessee "have created a substantial risk of harm to inmates at all of their Tennessee prisons, including TTCC." (*Id.* at ¶ 89). More particularly, via Count II Plaintiff alleges that because of the Count II Defendants' alleged failure to protect, "Granderson was exposed to fentanyl, [ ] ingested fentanyl," and subsequently died of a fentanyl overdose. (*Id.* at ¶¶ 91-92).

Via Count III, Plaintiff brings another Section 1983 claim, this one against Defendant CoreCivic, Inc., Defendant CoreCivic of Tennessee, Defendant Frink, Defendant Harris,

---

[12] In the context of its discussion of Count II, and solely in this context, the Court will refer to those Defendants against whom Count II is brought as the "Count II Defendants."

[13] In other words, Count II is what is more colloquially known as a "failure to protect" claim under the Eighth Amendment.

Defendant Medlin, Defendant Swindle, Defendant Hininger, and Defendant Dalius. (*Id.* at ¶¶ 94-103).[14] More specifically, Count III is a "Failure to Hire, Train & Supervise" claim. (*Id.* at 23). In Count III Plaintiff alleges that CoreCivic and Defendants "Frink, Harris, Medlin, Hininger, Dalius, and Swindle maintained a policy that permitted corrections officers to smuggle drugs into TTCC and into the prison population and to sell these dangerous and often deadly drugs to incarcerated individuals, who are distinctly risk prone." (*Id.* at ¶ 97). In Count III, Plaintiff alleges in the alternative that the Count III Defendants "did not have a policy that permitted officers to sell drugs in prison" but did have a policy "that failed to properly hire, train, and supervise their subordinates despite their personal knowledge of unlawful conduct presenting a substantial risk of injury to inmates in Defendant CoreCivic's care at TTCC" (*id.* at ¶ 99) and that Defendants further had a policy "that failed to train and supervise the corrections officers bringing the drugs into the facility and failed to train and supervise Defendants Frink and Harris, who knew about the drugs but did nothing to address the problem." (*Id.* at ¶ 102). Plaintiff concludes by alleging that the actions of the Count III Defendants "constitute a violation of Granderson's rights under 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution." (*Id.* at ¶ 103).[15]

Finally, in Count VII, Plaintiff brings a Section 1983 claim alleging *Monell* liability against Defendant CoreCivic, Inc., Defendant CoreCivic of Tennessee, Defendant Hininger, Defendant Swindle, Defendant Medlin, Defendant Dalius, and Defendant Frink. (*Id.* at ¶¶ 136-44).[16] Count

---

[14] In the context of its discussion of Count III, and solely in this context, the Court will refer to those Defendants against whom Count III is brought as the "Count III Defendants."

[15] As the Court will explain in more depth below, beyond the cursory mention of the Fourteenth Amendment quoted just above, Plaintiff has made no effort to identify exactly how the Count III Defendants' alleged failure to train could actually constitute a violation of the Fourteenth Amendment, or indeed what specific aspect of the Fourteenth Amendment the Count III Defendants' conduct violated.

[16] As above, in the context of its discussion of Count VII, and solely in this context, the Court will refer to those Defendants against whom Count VII is brought as the "Count VII Defendants."

VII is based on allegations that the Count VII Defendants adopted a "policy and practice of severely understaffing their facilities, including TTCC, without regard to inmate safety because understaffing is more profitable." (*Id.* at ¶ 137). Specifically, via Count VII Plaintiff alleges that Granderson's death is attributable to "CoreCivic's policy and practice of failing to ensure adequate staffing at its prison facilities, including TTCC[,]" which was "authorized by Defendants Hininger, Swindle, Medlin, Dalius, and Frink, and in which they knowingly acquiesced in accordance with CoreCivic's policy, custom, and practice of prioritizing profits over inmate safety." (*Id.* at ¶ 142).

Plaintiff also asserts various state law claims based on negligence (Count IV) (*id.* at ¶¶104-10), gross negligence (Count V) (*id.* at ¶¶ 111-13), the Tennessee Drug Dealer Liability Act (Count VI) (*id.* at ¶¶ 114-35), and loss of filial consortium (Count VIII) (*id.* at ¶¶ 145-48) against different combinations of the Defendants. As relevant here, Plaintiff asserts—and the Court agrees, at least at this juncture while all of Plaintiff's federal claims remain before the Court—that the Court may (not to say *must*) exercise jurisdiction over Plaintiff's state law claims in Counts IV, V, VI, and VIII through supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). (*Id.* at ¶ 16).

b.  Defendant-Movants' Motion

As noted above, via the Motion, Defendant-Movants argue that "Plaintiff's claims should be dismissed for failure to state a claim on which relief may be granted." (Doc. No. 36 at 3). Defendant-Movants assert (among other things) (1) that, with respect to Count I and Count II, Plaintiff has failed to adequately allege that any Defendant violated the Eighth Amendment with respect to Granderson's death (Doc. No. 37 at 8-13); (2) that, with respect to Count VII, Plaintiff has failed to allege that Granderson's death was caused by an official policy or a custom of CoreCivic (Doc. No. 37 at 13-19); and (3) that, with respect to Count III, Plaintiff's allegations "concerning an alleged failure to properly hire, train, or supervise cannot sustain a Section 1983

claim." (Doc. No. 37 at 19). Finally, with respect to Plaintiff's state law claims, Defendant-Movants argue that "the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims because there are no viable federal claims against Defendants." (Doc. No. 37 at 22). In her Response, Plaintiff takes issue with each of the Defendant-Movants' arguments, as will be detailed below.

<u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "The pleadings are not closed until every defendant has filed an answer." *Nat'l Bankers Tr. Corp. v. Peak Logistics LLC*, No. 12-2268-STA-TMP, 2013 WL 3070843, at *3 (W.D. Tenn. June 17, 2013). "Rule 12(c) may be employed as a vehicle for raising several of the defenses enumerated in Rule 12(b), including the defense of failure to state a claim upon which relief may be granted." *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979); *see also Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989) (citing *Amersbach*, 598 F.2d at 1038); *Becker v. Crounce Corp.*, 822 F. Supp. 386, 391 n.4 (W.D. Ky. 1993) (citing *Amersbach*, 598 F.2d at 1038).

When that defense is raised via a motion for judgment on the pleadings, the district court evaluates the motion using the same standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n.1 (6th Cir. 1988); *Becker*, 822 F. Supp. at 391 n.4 (citing *Amersbach*, 598 F.2d at 1038); *Kinney v. Mohr*, No. 2:13-CV-1229, 2017 WL 1395623, *4 (S.D. Ohio Apr. 19, 2017) (citing *Amersbach*, 598 F.2d at 1038); *Clemons v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 3-14-1690, 2015 WL 4717398, at *1 (M.D. Tenn. Aug. 7, 2015). Thus, "[t]he same rules which apply to

judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6)[.]" *Lacy v. Ohio Dep't of Job and Fam. Servs.*, No. 2:16-CV-912, 2017 WL 1397522, at *1 (S.D. Ohio Apr. 19, 2017) (citing *Amersbach*, 598 F.2d at 1038). Indeed, when a Rule 12(c) motion is based on an asserted failure to state a claim upon which relief can be granted, "[t]he only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss." *Ruppe v. Knox Cnty. Bd. of Educ.*, 993 F. Supp. 2d 807, 809 (E.D. Tenn. 2014) (quoting *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003)). In summary, the applicable standard for this Motion is the standard for motions under Rule 12(b)(6).[17]

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny provide the applicable standard for motions to dismiss for failure to state a claim under Rule 12(b)(6). For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018).

---

[17] Consistent with this discussion, the grant of a motion under Rule 12(c) (despite its being called a motion for "judgment" on the pleadings) typically is treated as resulting in a *dismissal* rather than a "judgment"—a term that sometimes carries connotations that extend beyond mere dismissal.

Consistent with these principles, the Sixth Circuit has noted that "[t]o survive a Rule 12(c) motion, 'a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory.'" *Hindel v. Husted*, 875 F.3d 344, 346–47 (6th Cir. 2017) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).

As a general rule, if matters outside the pleadings are presented on a Rule 12(c) motion and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). *See Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006) ("Because Plaintiff presented matters outside of the pleadings with respect to Defendant's Rule 12(c) motion, and because the district court did not exclude these matters, the district court should have converted the Rule 12(c) motion to a motion for summary judgment."). This applies even if the non-excluded material outside the pleadings is not actually relied upon or even considered at all by the court. *See id.* However, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account [without converting the motion into one for summary judgment]." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

<u>DISCUSSION</u>

The Court will next analyze the arguments Defendant-Movants and Plaintiff advance respectively with respect to the Motion. Specifically, the Court will begin by briefly discussing the general nature of Section 1983 claims, before then analyzing the parties' arguments with respect to each individual claim Plaintiff alleges, beginning with Plaintiff's federal claims (all of them Section 1983 claims, as noted above) and then turning to Plaintiff's state law claims.

*1. Section 1983 Claims Generally*

Section 1983 authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, a complaint must plausibly allege (1) a deprivation of a Constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014). Thus, to state a claim under Section 1983, a plaintiff must, as a threshold matter, allege that he or she suffered a deprivation of a specific right secured by the Constitution or laws of the United States. *Id.* In addition, a plaintiff must show that the deprivation was caused by a person acting under color of state law. As an initial matter, the Court notes that Defendant-Movants do not contest that the Defendants are state actors for purposes of a Section 1983 claim. Rather, the dispute in the briefing is solely as to whether a deprivation of a Constitutional or other federal right occurred.

*2. Plaintiff's Federal Claims*

The Court next will analyze Plaintiff's claims, beginning with Plaintiff's federal claims, turning first to Count I and Count II specifically.

a. <u>Counts I and II: Eighth Amendment Deliberate Indifference and Failure to Protect, Respectively</u>

Via Count I (as noted above), Plaintiff asserts a Section 1983 claim against Defendant CoreCivic, Inc., Defendant CoreCivic of Tennessee, Defendant Frink, Defendant Medlin, Defendant Dalius, Defendant Hininger, Defendant Swindle, Defendant Harris, and Defendant Doe. (Doc. No. 1 at ¶¶ 41-70). Count I is based on alleged violations of Granderson's Eighth Amendment rights as a result of the alleged "deliberate indifference" of the Count I Defendants to Granderson's medical needs on the night of May 4, 2022. Plaintiff further alleges via Count I that

"[d]ue to, in whole or in part" CoreCivic's "pattern and practices of severely understaffing TTCC and of willfully ignoring the rampant availability of overdose-producing drugs, including fentanyl, to its' inmates, Granderson did not receive any meaningful medical treatment for his serious medical needs on May 4 and May 5, 2022." (*Id.* at ¶ 67). Via Count II (as also noted above) Plaintiff brings another Section 1983 claim, this one against Defendant CoreCivic, Inc., Defendant CoreCivic of Tennessee, Defendant Frink, Defendant Hininger, Defendant Dalius, Defendant Medlin, Defendant Harris, and Defendant Swindle. (Doc. No. 1 at ¶¶ 71-93). Count II arises out of alleged violations of Granderson's Eighth Amendment Rights due to the alleged failure of the Count II Defendants "to protect the distinctly risk-prone inmate population [at TTCC] from unfettered access to dangerous narcotics, including fentanyl." (*Id.* at ¶ 91). Plaintiff also alleges via Count II that the unconstitutional "policies and practices" of Defendant CoreCivic, Inc. and Defendant CoreCivic of Tennessee "have created a substantial risk of harm to inmates at all of their Tennessee prisons, including TTCC." (*Id.* at ¶ 89). More particularly, via Count II Plaintiff alleges that as a result of this failure to protect, "Granderson was exposed to fentanyl, [ ] ingested fentanyl," and subsequently died. (*Id.* at ¶¶ 91-92).

Although Count I is framed in terms of deliberate indifference, and Count II in terms of failure to protect, failure-to-protect claims and deliberate-indifference claims under the Eighth Amendment are governed by the same standards. *See Amick v. Ohio Dep't of Rehab. & Correction*, 521 F. App'x 354, 361 (6th Cir. 2013) (failure-to-protect claims are "governed by standards substantially similar to those applied to [ ] claim[s] for deliberate indifference to serious medical needs."); *Cook v. CoreCivic, Inc.*, No. 3:24-CV-00095, 2025 WL 967544, at *5 (M.D. Tenn. Mar. 31, 2025) (noting that the Sixth Circuit refers to deliberate-indifference claims alternatively as failure-to-protect claims (citing *Caraway v. CoreCivic of Tenn., LLC,* 98 F.4th 679, 683 (6th Cir.

2024))); *Starr v. Wainwright*, 686 F. Supp. 637, 647 (N.D. Ohio 2023) ("I apply the 'deliberate indifference' standard to failure-to-protect claims." (citing *Zakora v. Chrisman*, 44 F.4th 452, 468 (6th Cir. 2022))). Accordingly, the Court will apply the same standard to Plaintiff's claims in both Count I and Count II and will consider these counts concurrently below.

To state a Section 1983 claim based on deliberate indifference or failure to protect in violation of the Eighth Amendment, a plaintiff must make a showing of both "an objective component (a substantial risk of harm) and a subjective component (the defendant's knowledge of and disregard for that risk)." *Cook*, 2025 WL 967544, at *4. With respect to the instant action then, Plaintiff "must show that the Defendants were aware of the risk to [Granderson's] safety, and that [Defendants] acted with a sufficiently culpable state of mind." *Id.* In other words, under the Eighth Amendment, which protects against cruel and unusual punishment, Plaintiff must demonstrate that Defendants acted with deliberate indifference to a substantial risk of serious harm to Granderson.

Taken together, for her deliberate indifference and failure-to-protect claims, Plaintiff needs to plead two components, one of which is objective and the other of which is subjective. The first component is that there existed an objectively serious risk to Granderson's health and safety prior to Granderson's overdose. The second component is that Defendants were subjectively aware of this (objectively serious) risk but failed to take appropriate action to mitigate or eliminate it.

The Court will begin by addressing the first (i.e., the objective) component. The question is whether Plaintiff has adequately pled the existence of an objectively serious risk to Granderson prior to the time of his death. In addressing this component, the Court finds it useful to review two recent and particularly relevant Sixth Circuit opinions—*Zakora v. Chrisman*, 44 F.4th 452 (6th Cir. 2022) and *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679 (6th Cir. 2024)—not least

because the respective briefing of Defendant-Movants and Plaintiff on this component focuses extensively on these two cases.

In *Zakora*, the Sixth Circuit considered a failure-to-protect claim brought by the estate of Michael Zakora after Zakora himself overdosed in a Michigan state prison. 44 F.4th at 460-63. In *Zakora*, the Sixth Circuit reversed the district court's granting of a motion to dismiss, or in the alternative, summary judgment to defendants. The Sixth Circuit specifically concluded in part that Zakora's estate plausibly alleged an objectively serious risk of harm to Zakora himself—that is, satisfied the first component of the standard elucidated just above—based on the "unfettered access to deadly drugs inside [the prison Zakora was incarcerated at]." *Id.* at 470. The court in *Zakora* found that Zakora's estate had plausibly alleged an objectively serious risk of harm to Zakora based on three key alleged facts: (1) the "widespread presence of drugs" in the prison facility where Zakora was incarcerated, *id.* at 470, including how the drugs got into that prison facility, *id.* at 461 (noting that drugs were smuggled inside basketballs thrown over the prison fence); (2) the "two prior overdoses in Zakora's [twelve-to-sixteen-inmate housing unit in the prison] in the [two] days immediately preceding [Zakora's] death" *id.* at 471, 461; and (3) the failure of prison officials employed where Zakora was incarcerated to investigate the two previous overdose deaths in Zakora's housing unit—overdoses that, again, occurred two days before Zakora's own fatal overdose. *Id.* at 461-62, 470, 472.[18]

Turning to *Caraway*, in that case plaintiff was the mother (and contemporaneously the estate) of an inmate who had died in CoreCivic custody due to a fentanyl overdose. The plaintiff brought Eighth Amendment deliberate-indifference claims based on the aforementioned overdose.

---

[18] Later, in *Caraway*, the Sixth Circuit provided a helpful overview of the key facts on which the court relied in *Zakora* in finding an objectively serious risk of harm, as well as the applicability of these facts to similar cases in the future. *See Caraway*, 98 F.4th at 684-686.

98 F.4th at 683. Specifically, the plaintiff alleged that CoreCivic's staffing shortages led to inadequate screening of prison guards, allowing corrupt employees to smuggle in illicit drugs, which, in turn, resulted in the inmate's fatal fentanyl overdose. *Id.* at 682.

In *Caraway*, the Sixth Circuit, affirming the district court's dismissal on Rule 12(b)(6) grounds, rejected the plaintiff's Eighth Amendment deliberate-indifference claims, and held that the plaintiff did not adequately allege the commission of the asserted Eighth Amendment violation by anyone. That is, the court asked whether the plaintiff had "allege[d] facts plausibly showing [the] two components [of the failure to protect/deliberate indifference standard,]" 98 F.4th at 683, and then answered the question in the negative.

First, the Sixth Circuit noted that the (objective) seriousness of the risk of harm was to be measured by the seriousness of the risk itself and not by the seriousness of what happened to the inmate (such as death by overdose) because that risk ultimately happened to be realized. *Id.* at 685. This is because "[t]he relevant constitutional 'injury' is the exposure to an objectively excessive risk, not any physical harm that befalls the inmate because of that risk." *Id.* The court then noted that "that principle of constitutional injury has implications for § 1983's causation requirement in this context." *Id.* And turning to § 1983's causation requirement, the court explained that "the plaintiff must show that the defendants' unconstitutional act or omission failed to alleviate the excessive risk [that the deceased inmate] faced." *Id.* Given the plaintiff's theory in *Caraway*, that meant that the plaintiff had to "allege facts supporting the conclusion that the defendants' understaffing caused drugs to proliferate at [the relevant prison]." *Id.* at 685-86.

The court held that the plaintiff failed to do so. First, the court took pains to note that the "failure to adequately staff a prison—even a deliberate one—is not itself a constitutional violation." *Id.* at 685 (citing *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012)). The

court then explained that although understaffing may correlate with increased drug activity in the prison, a mere correlation does not establish a causal link between CoreCivic's staffing decisions and the specific harm that occurred. *Id.* at 686. The court emphasized that to succeed on a deliberate indifference (i.e., failure to protect) claim, the plaintiff must demonstrate that CoreCivic's staffing policies directly led to the harm suffered by the inmate, and not merely that a generalized correlation exists between those policies and that harm. *Id.* As the court explained, a plaintiff must present specific, non-conclusory allegations that directly connect the alleged constitutional violation to the particular constitutional injury, rather than relying on generalized statements about the correlation between staffing levels and prison conditions. *See id.* at 685-86; *id.* at 686 ("The allegation that intentional understaffing caused drug proliferation at [the relevant prison] is thus nothing more than a 'the-defendant-unlawfully-harmed-me accusation,' which the district court properly rejected." (quoting *Iqbal*, 556 U.S. at 678)).

Crucially, the court in *Caraway* also took pains to distinguish *Zakora*. Indeed, the court noted that the Sixth Circuit's conclusion in *Zakora* (i.e., that there was an objectively serious risk of harm based on the prevalence of drugs in a prison environment) "was a limited one" based on the "egregiousness of Zakora's circumstances." *Id.* at 684. Furthermore, the court in *Caraway* ultimately concluded that the plaintiff in *Caraway* had failed to allege an objectively serious risk (due to the proliferation of drugs) to the inmate who had died in CoreCivic custody given that "[o]nly one of the three key facts which made [*Zakora*] extraordinary" were present in the plaintiff's allegations in *Caraway*. *Id.* at 684. Specifically, the court in *Caraway* found that although the plaintiff had (arguably) alleged the widespread presence of drugs, the plaintiff's allegations "that inmates have overdosed—even at an increased rate—[did not] come close to showing the kind of excessive, one-for-every-eight risk [of an overdose that] Zakora faced," that

"the [plaintiff] provides no detail about the magnitude of the overdose problem it alleges," and that there were only vague allegations about "defendants' failure to respond to the alleged drug problem[,]" which were a "far cry from *Zakora*'s specific, close-in-time failure" to investigate drug overdoses. *Id.* at 684-85.

Here, the Defendant-Movants' and the Plaintiff's briefing on the first part of the deliberate-indifference/failure-to-protect standard focuses extensively on *Zakora* and *Caraway*. Unsurprisingly, Plaintiff contends that the facts of this case hew closer to *Zakora* (where the Sixth Circuit found that there was an objectively serious risk to an inmate based on the presence of drugs) so that the Court should find that there existed an objectively serious risk to Granderson based on the proliferation of drugs at TTCC. Defendant-Movants, on the other hand, contend that the facts of this case are more analogous to *Caraway* (where the Sixth Circuit found that there was not an objectively serious risk to an inmate) so that the Court should not find that there existed an objectively serious risk to Granderson based on the proliferation of drugs at TTCC. Below, the Court will apply *Zakora* and *Caraway* to the instant case and begin by examining whether the allegations in this action are analogous to the three key facts alleged in *Zakora* that supported finding an objectively serious risk of harm.

Turning to the first of those key alleged facts —the widespread presence of drugs and how the drugs arrived in the prison facility—Defendant-Movants argue that "Plaintiff does not specifically allege how the drugs that Granderson actually took got inside [TTCC]" and that Plaintiff instead simply refers to "the 'incessant distribution of illegal drugs'" at TTCC. (Doc. No. 37 at 10 (quoting Doc. No. 1 at ¶ 76)). Defendant-Movants argue that such allegations plainly do not "demonstrate the required level of specificity" to show an objectively serious risk of harm to Granderson. (Doc. No. 37 at 10). Plaintiff contends that the allegations in the Complaint show that

TTCC was a drug infested environment, and that the Complaint also includes allegations about how the drugs arrived in the facility—namely through TTCC staff. (Doc. No. 40 at 5).

With respect to this first key alleged fact, the Court finds that Plaintiff's allegations are analogous to *Zakora*. As detailed above, the Complaint presents sufficient allegations to establish that there was a widespread presence of drugs in TTCC in the leadup to Granderson's overdose. Indeed, Plaintiff alleges that TTCC "reported 120 incidents of drug selling, possession, and/or use among inmates in 2020, 265 incidents reported in 2021, and 229 incidents reported for the first half of 2022." (Doc. No. 1 at ¶ 83). Likewise, Plaintiff alleges with detail just how the drugs were introduced into TTCC, including that "Defendant Haggard and Defendant Buss knowingly participated in the illegal drug market at TTCC through their distribution of fentanyl to inmates housed therein," (*id.* ¶ at 30), and that "the predominantly female guard staff at CoreCivic facilities often have gang affiliations or romantic relationships with gang members who are inmates at TTCC," which allows "illegal gangs utilize the gang-affiliated guards at TTCC to smuggle drugs into TTCC and other CoreCivic facilities." (*Id.* at ¶ 31). Plaintiff also alleges that "[d]uring [(and after)] Granderson's incarceration at TTCC, several members of TTCC staff were arrested for smuggling drugs into TTCC." (*Id.* at ¶ 84). So, the Court finds that with respect specifically to the first of the key alleged facts relied on in *Zakora* for finding an objectively serious risk of harm— the widespread presence of drugs and how the drugs arrived in the prison facility—the allegations in this action are analogous to *Zakora*.

Turning to the second of the key alleged facts relied on by the court in *Zakora* for finding an objectively serious risk of harm—previous overdoses—Defendant-Movants contend:

> [Although] Plaintiff alleges that there have been "numerous fatal overdoses at [Trousdale] and dozens of non-fatal overdoses at [Trousdale] from May 2020 through May 2022" ([Doc. No. 1 at] ¶ 89), she still offers "no detail about the magnitude of the overdose problem" at Trousdale. *Caraway*, 2024 WL 1546522, at

> *3. Plaintiff provides the names of two inmates who allegedly died of drug overdoses at Trousdale in the twelve months before Granderson's death, but this does not "come close to showing the kind of excessive, one-for-every-eight risk Zakora faced." *Id.*

(Doc. No. 37 at 11-12). In response, Plaintiff contends that the "Complaint includes both general allegations that there were a high number of overdoses, as well specific references to two specific inmates who overdosed." (Doc. No. 40 at 6).

As far as this second key alleged fact, the Court finds that the allegations in this action are less analogous to *Zakora* (where, as a reminder, the Sixth Circuit found an objectively serious risk of harm based on the proliferation of drugs) and instead are much closer to the alleged facts in *Caraway* (where the Sixth Circuit found that there was no objectively serious risk of harm). Here, it is true that the Complaint includes allegations concerning "[m]ultiple inmates [who] overdosed on fentanyl before and after Granderson's death," (Doc. No. 1 at ¶ 132), and specifically names two inmates at TTCC who unfortunately overdosed in the *year* prior to Granderson's death. (*Id.* at ¶ 89). However, as the Sixth Circuit made clear in *Caraway*, "the mere allegation that inmates have overdosed—even at an increased rate—doesn't come close to showing the kind of excessive, one-for-every-eight risk Zakora faced." *Caraway*, 98 F.4th at 684. Moreover, although the complaint in *Zakora* (like the Complaint here) had allegations concerning overdoses of two other inmates prior to Zakora's death, these were overdoses by two inmates in *Zakora's 12-to-16-person cell block*, which occurred just *two days prior* to Zakora's own overdose. *Zakora*, 44 F.4th at 461. Here, Plaintiff's allegations concerning the specific overdoses of two inmates at TTCC do not rise to the excessive risk seen in *Zakora* given that Plaintiff's allegations concern overdoses taking place in the *year* prior to Granderson's overdose (rather than in the days prior to Granderson's overdose) and concern inmates from TTCC as a whole overdosing (rather than inmates in Granderson's specific cell block overdosing). So, "[a]bsent more detailed allegations," the Court

"cannot reasonably infer an overdose problem as acute as the one in *Zakora*." *Caraway*, 98 F.4th at 685.

Turning to the last of the key alleged facts relied on by the court in *Zakora* for finding an objectively serious risk of harm—a failure of prison officials to investigate previous overdoses—Defendant-Movants contend that "while the Complaint includes generalized allegations about the failure to respond to the alleged drug problem at Trousdale, 'those allegations are a far cry from *Zakora's* specific, close-in-time failure.'" (Doc. No. 37 at 11 (quoting *Caraway*, 98 F.4th at 685)). Plaintiff does not seem to directly address this point but does assert generally that Defendants "had notice of the risk that inmates would overdose, based on their unfettered access to drugs and failed to reasonably respond to that risk." (Doc. No. 40 at 9).

As far as this third key alleged fact, the Court finds that the allegations in this action are less analogous to *Zakora* and instead are much closer to the facts in *Caraway*. Here, Plaintiff has made only general allegations that Defendants failed to "adequately investigate reports of drug smuggling by staff." (Doc. No. 1 at ¶ 90). Defendant-Movants argue in their Reply, "Plaintiff does not allege that prison officials failed to investigate the overdoses of any other inmates, nor does she contend that any alleged instances of employees bringing contraband into the facility went uninvestigated." (Doc. No. 41 at 2). Defendant-Movants' assertion is accurate. And because of the omissions pointed out by Defendant-Movants, Plaintiff's allegations with respect to this fact are far from the "specific, close-in-time failure," *Caraway*, 98 F.4th at 685, of the prison officials in *Zakora* to investigate inmates' deaths (deaths, as a reminder, which occurred two days before Zakora's own fatal overdose). *Zakora*, 44 F.4th at 461-62, 470. 472. Instead, just like in *Caraway*, because Plaintiff here "alleged no immediately prior overdoses" to Granderson's own overdose, "prison officials couldn't have failed to investigate them." *Caraway*, 98 F.4th at 685. And just like

the court in *Caraway*, the Court concludes that Plaintiff's "generalized allegations about the defendants' failure to respond to the alleged drug problem" are insufficient for the Court to conclude that the problems in the instant action are similar to those in *Zakora*. *Id.*

In sum, of the three key alleged facts present in *Zakora* that allowed the court to conclude that there was an objectively serious risk of harm to the inmate in that action, only one is present here. And thus, based on *Zakora* at least, the Complaint fails to allege that Granderson faced an excessive risk of harm from unfettered access to drugs. *Cf. Caraway*, 98 F.4th at 685 ("Only one of the three key allegations in *Zakora* is arguably present here. Thus, the complaint fails to allege that Caraway faced an excessive risk of harm from unfettered access to drugs.").

Perhaps recognizing that this action is distinguishable from *Zakora*, Plaintiff, turning away from an objectively serious risk of harm caused by the proliferation of drugs in and of itself, also argues that there is an "objectively serious risk of harm caused by the *understaffing* of TTCC," (Doc. No. 40 at 7 (emphasis added)) and argues that "the Complaint sets forth in detailed allegations facts describing chronic understaffing of TTCC." (*Id.*). Plaintiff further argues that "due to the understaffing and the deliberate indifference to such a dangerous situation demonstrated by the Defendants, Granderson was left without medical intervention [on the night of May 4, 2022] for approximately two hours, resulting in his death." (Doc. No. 40 at 8 (citing Doc. No. 1 at ¶¶ 67-69)). Defendant-Movants argue by contrast that "the Complaint at best raises the inference that employees allowed drugs to enter Trousdale, but those allegations 'have no well-pled connection to understaffing.'" (Doc. No. 41 at 2-3 (quoting *Caraway*, 98 F.4th at 687)).

As an initial matter, it seems to the Court that Plaintiff does not actually argue directly that understaffing caused drugs to proliferate at TTCC and thereby created an objectively serious risk to Granderson based on the proliferation of those drugs. To the extent that Plaintiff did intend to

argue this theory, Plaintiff's allegations are not sufficient to support such a theory. Plaintiff, like the plaintiff in *Caraway*, has failed to allege facts supporting the conclusion that the Defendants' understaffing actually caused drugs to proliferate at TTCC. So at least as far as the alleged understaffing creating an objectively serious risk to Granderson *by allowing a proliferation of drugs*, Plaintiff's understaffing theory fails. *See Caraway*, 98 F.4th at 686 (rejecting theory that understaffing caused rampant drug use where complaint contained "only generalized allegations" that prison understaffing caused drug use).

However, Plaintiff also puts forward another, somewhat different, theory with respect to the alleged understaffing: namely that Defendants' understaffing was what *prevented Granderson from actually receiving his required medical care on the night of May 4, 2022*. However, Plaintiff's theory in this respect also fails. Plaintiff fails to adequately allege factual matter suggesting that it was Defendants' understaffing directly that led to Granderson's lack of medical treatment on the night of May 4, 2022. Instead, Plaintiff's claims rely on "broad allegations that CoreCivic prioritizes profit over safety and, as a result, deliberately operates with fewer officers than necessary." *Cook*, 2025 WL 967544, at *7. As this Court has previously noted relying on *Caraway*, such general corporate-level allegations, which lack factual matter tying the understaffing to the actual risk alleged (meaning, with respect to this particular theory, a risk of not having timely access to medical treatment), fail to state a plausible claim for relief under Section 1983. *Id.* (citing *Caraway*, 98 F.4th at 686). Moreover, although Plaintiff cites audits and other reports criticizing staffing at CoreCivic facilities (Doc. No. 1 at ¶¶ 35, 138), Plaintiff does not connect these criticisms to the alleged risk (from lack of timely medical attention) faced by Granderson specifically. In other words, Plaintiff also cannot successfully rely on the theory that understaffing created an

objectively serious risk of harm to Granderson through the potential for a lack of timely medical attention for inmates as a result of the alleged understaffing.

Given the above, Plaintiff has failed to adequately plead an objectively serious risk of harm to Granderson, and Plaintiff's Eighth Amendment claims in Count I (alleging deliberate indifference) and Count II (alleging a failure to protect) fail as to all Defendants.[19] *See Caraway*, 98 F.4th at 686 (finding that because a "complaint fail[ed] to adequately plead an objectively

---

[19] This also means that the sole claim (presented in Count I) that Plaintiff brings against unnamed Defendant Doe also fails—even though Defendant Doe is not a movant with respect to the instant Motion—given that the claim against Defendant Doe in Count I is integrally related to the claims in Count I brought against the other Count I Defendants. *See Galliard v. USAA Fed. Savings Bank*, No. 12-CV-11459, 2012 WL 13012620, at *11 (E.D. Mich. Nov. 15, 2012) ("[a] court may grant a motion to dismiss even as to nonmoving defendants . . . where the claims against all defendants are integrally related"); *Wright v. Richardson*, 740 F. Supp. 3d 601, 611 n.3 (E.D. Mich. 2024) ("A district court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants." (quoting *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008))).

The failure to allege an Eighth Amendment violation with respect to Count I and Count II also means that any attempt by Plaintiff to impose *Monell* liability on CoreCivic via Count I and Count II based on a particular policy or practice necessarily fails because *Monell* liability requires that an underlying constitutional violation have occurred. *See e.g., Caraway*, 98 F.4th at 687 ("The [plaintiff] seeks to impose *Monell* liability on the corporate [CoreCivic] defendants. But because the complaint doesn't allege an underlying constitutional violation, those claims fail."); *Cook*, 2025 WL 967544, at *5 ("As to CoreCivic's liability (which as indicated above would necessarily be *Monell* liability), *Caraway* (like myriad prior cases) makes clear, *Monell* liability is dependent on the existence of an underlying constitutional violation (by someone). If no such violation is plausibly alleged, the corresponding *Monell* claims necessarily fail."). Given that Plaintiff has failed to allege a constitutional violation (for the reasons detailed in the Court's analysis of Count I and Count II), *Monell* liability cannot be established as to CoreCivic.

Furthermore, the Court notes that on claims premised on CoreCivic's maintenance of particular policies the individual Defendants cannot be sued in their *individual* capacities, but rather must be sued in their *official* capacities. And crucially, "[a]n official-capacity claim against a person is essentially a claim against the municipality [or corporation]." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). In other words, "an official-capacity claim is merely another name for a claim against the municipality [or corporation]." *Essex v. County of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013). Put another way, to the extent that Plaintiff intended to bring claims against any of the individual Defendants based on CoreCivic's maintenance of any particular policies, such claims would (a) need to be made against the individual Defendants only in their official capacities, (b) accordingly be treated as having been made against CoreCivic (and *only* CoreCivic), and (c) fail for the same reasons that Plaintiff's attempt to impose *Monell* liability on CoreCivic via Count I and Count II fails.

serious risk of harm[,] [t]hat's enough to sink [an] Eighth Amendment [deliberate indifference] claim.").[20]

  b. <u>Count III: Failure to Train</u>

As noted above, in Count III, Plaintiff brings a "Failure to Hire, Train & Supervise" claim under Section 1983, (Doc. No. 1 at 23), against Defendant CoreCivic, Inc., Defendant CoreCivic of Tennessee, Defendant Frink, Defendant Harris, Defendant Medlin, Defendant Swindle, Defendant Hininger, and Defendant Dalius. (*Id.* at ¶¶ 94-103). Via Count III, Plaintiff alleges that CoreCivic and Defendants "Frink, Harris, Medlin, Hininger, Dalius, and Swindle maintained a policy that permitted corrections officers to smuggle drugs into TTCC and into the prison population and to sell these dangerous and often deadly drugs to incarcerated individuals, who are distinctly risk prone." (*Id.* at ¶ 97). Via Count III Plaintiff also alleges, in the alternative, that the Count III Defendants "did not have a policy that permitted officers to sell drugs in prison" but did have a policy "that failed to properly hire, train, and supervise their subordinates despite their personal knowledge of unlawful conduct presenting a substantial risk of injury to inmates in Defendant CoreCivic's care at TTCC" (*id.* at ¶ 99) and that Defendants had a policy "that failed to train and supervise the corrections officers bringing the drugs into the facility and failed to train and supervise Defendants Frink and Harris, who knew about the drugs but did nothing to address the problem." (*Id.* at ¶ 102). Plaintiff concludes by alleging that the actions of the Count III Defendants "constitute a violation of Granderson's rights under 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution." (*Id.* at ¶ 103).

---

[20] Given that the Court has found that Plaintiff has failed to adequately plead an objectively serious risk of harm to Granderson (the first component of the deliberate-indifference/failure-to-protect standard), the Court will not examine the second (subjective) component of the deliberate-indifference/failure-to-protect standard herein.

Although Defendant-Movants and Plaintiff spill much ink on this count, Plaintiff's failure to train claim in Count III fails for a simple reason: Plaintiff has failed to adequately plead that an underlying constitutional violation occurred such as to support a failure to train claim. *See Buck v. City of Highland Park, Michigan*, 733 F. App'x 248, 254 (6th Cir. 2018) ("But a prerequisite to establishing liability under § 1983 for failure to train is that a constitutional violation has occurred."); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (same).[21] Here, for the reasons already stated, Plaintiff has failed to adequately plead that a violation of Granderson's Eighth Amendment rights (either in the form of deliberate indifference or failure to protect) occurred, so a violation of the Eighth Amendment cannot sustain Plaintiff's claim in Count III. And, to the extent that Plaintiff intended to bring Count III as a claim predicated on violations of the Fourteenth Amendment, Plaintiff has made no effort to plead in her Complaint that a Fourteenth Amendment violation occurred beyond a conclusory mention in the Complaint that the Count III Defendants' failure to train amounted to a violation of the Fourteenth Amendment. (Doc.

---

[21] The Court also notes (as touched on above and in more depth below) that to the extent that Plaintiff intended to impose *Monell* liability on CoreCivic via Count III based on a particular policy or practice, *Monell* liability cannot be established without an underlying constitutional violation. *See e.g., Caraway*, 98 F.4th at 687 ("The [plaintiff] seeks to impose *Monell* liability on the corporate [CoreCivic] defendants. But because the complaint doesn't allege an underlying constitutional violation, those claims fail."); *Cook*, 2025 WL 967544, at *5 ("As to CoreCivic's liability (which as indicated above would necessarily be *Monell* liability), *Caraway* (like myriad prior cases) makes clear, *Monell* liability is dependent on the existence of an underlying constitutional violation (by someone). If no such violation is plausibly alleged, the corresponding *Monell* claims necessarily fail."). Given that Plaintiff has failed to allege a constitutional violation, *Monell* liability cannot be established as to CoreCivic.

Furthermore, the Court notes that on claims premised on CoreCivic's maintenance of particular policies, the individual Defendants cannot be sued in their *individual* capacities, but rather must be sued in their *official* capacities. And crucially, "[a]n official-capacity claim against a person is essentially a claim against the municipality [or corporation]." *Peatross*, 818 F.3d at 241. In other words, "an official-capacity claim is merely another name for a claim against the municipality [or corporation]." *Essex*, 518 F. App'x at 354. Put another way, to the extent that Plaintiff intended to bring claims against any of the individual Defendants based on CoreCivic's maintenance of any particular policies, such claims would (a) need to be made against the individual Defendants only in their official capacities (b) accordingly be treated as having been made against CoreCivic (and *only* CoreCivic), and (c) fail for the same reasons that Plaintiff's attempt to impose *Monell* liability on CoreCivic fails.

No. 1 at ¶ 103). Plaintiff has otherwise made no effort to identify exactly how the Count III Defendants' alleged failure to train could actually constitute a violation of the Fourteenth Amendment.[22] Accordingly, Count III will be dismissed.[23]

    c.  Count VII: *Monell* Liability

Finally, turning to Count VII, as noted above, via Count VII, Plaintiff seeks to impose *Monell* liability on Defendant CoreCivic, Inc., Defendant CoreCivic of Tennessee, Defendant Hininger, Defendant Swindle, Defendant Medlin, Defendant Dalius, and Defendant Frink. (Doc. No. 1 at ¶¶ 136-44).[24] Like parts of Plaintiff's other federal counts, Count VII is based on policies in place at TTCC. In particular, Count VII is based on allegations that the Count VII Defendants adopted a "policy and practice of severely understaffing their facilities, including TTCC, without regard to inmate safety because understaffing is more profitable." (*Id.* at ¶ 137).

However—and as noted at length in the footnotes above—given that Plaintiff has failed to allege an underlying constitutional violation—as shown by the failure of Plaintiff to state a claim as to her federal Section 1983 claims alleging violations of the Eighth Amendment in Counts I and II—Plaintiff's attempts to impose *Monell* liability on the Count VII Defendants also fail.[25] *See*

---

[22] Indeed, Plaintiff makes not a single mention of the Fourteenth Amendment in her Response.

[23] The Court also notes for clarity that to the extent that Plaintiff attempts to otherwise impose supervisory liability on certain individual Defendants (presumably in their individual capacities) through Count III or any of her other federal counts, because the Complaint does not allege an underlying constitutional violation, any claims of supervisory liability necessarily fail. *See Payne v. Sevier Cnty.*, No. 3:14-CV-346-PLR-CCS, 2016 WL 552351, at *7 (E.D. Tenn. Feb. 10, 2016) (collecting cases for the proposition that supervisory liability under § 1983 cannot attach where there is no underlying constitutional violation), *aff'd*, 681 F. App'x 443 (6th Cir. 2017).

[24] As above, in the context of its discussion of Count VII, and solely in this context, the Court will refer to those Defendants against whom Count VII is brought as the "Count VII Defendants."

[25] Although the Court refers here to all of the Count VII Defendants (including the individuals who are included among the Count VII Defendants), the Court notes in line with its analysis in footnotes above, that any claim predicated on *Monell* liability could be asserted only against CoreCivic—either through claims

*Caraway*, 98 F.4th at 687 ("because the complaint doesn't allege an underlying constitutional violation, [the *Monell*] claims fail."); *Cook*, 2025 WL 967544, at *6 ("*Monell* liability is dependent on the existence of an underlying constitutional violation (by *someone*). If no such violation is plausibly alleged, the corresponding *Monell* claims necessarily fail"). *Cf. Williams v. CoreCivic of Tennessee, LLC*, No. 25-5377, 2026 WL 323971, at *4, *5 (6th Cir. Feb. 6, 2026) (declining to reach the question of *Monell* liability where a plaintiff failed to sustain a plausible Section 1983 claim for Eighth Amendment violations). Accordingly, Count VII will also be dismissed.

### 3. Plaintiff's State Law Claims

Plaintiff also asserts several state law claims (Count IV, Count V, Count VI, Count VIII) against various combinations of the Defendants. With respect to these claims, Defendant-Movants contend that "the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims because there are no viable federal claims against Defendants." (Doc. No. 37 at 22). Plaintiff makes no effort to argue that, if her federal claims are dismissed, the Court should continue to exercise supplemental jurisdiction over her state law claims.

It is well-settled that a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Ford v. Frame*, 3 F. App'x 316, 318 (6th Cir. 2001) ("[D]istrict courts possess broad discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed."). The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v.*

---

specifically against CoreCivic itself or through claims against the individual Defendants in their official capacities—and could not be asserted against the individual Defendants in their individual capacities.

*Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Having determined that Plaintiff's federal claims (over which the Court has original jurisdiction) should be dismissed, and because the Court finds that the aforementioned factors weigh in favor of declining jurisdiction over Plaintiff's state law claims—not least because Plaintiff does not otherwise argue that the Court should continue to exercise supplemental jurisdiction over her state law claims in the event the Court determines that her federal claims should be dismissed—the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Instead, the Court will dismiss them without prejudice. Plaintiff may seek to refile them in a Tennessee state court, although the Court expresses no opinion about how those claims might fare in state court.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** the Defendant-Movants' Motion (Doc. No. 36) in its entirety. Plaintiff's federal claims (Count I, Count II, Count III, and Count VII) will be dismissed in their entirety with prejudice. The Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and these claims (Count IV, Count V, Count VI, and Count VIII) will be dismissed in their entirety without prejudice.

An appropriate accompanying order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE